### FOR THE

## COUNTY OF ADDISON.

### JANUARY TERM, 1844.

---

PRESENT,

Hon. CHARLES K. WILLIAMS, CHIEF JUDGE.
Hon. STEPHEN ROYCE,
Hon. MILO L. BENNETT, } ASSISTANT JUDGES.
Hon. WILLIAM HEBARD,

---

## PAUL P. HOLLEY v. RILEY M. ADAMS, administrator of RILEY ADAMS.

A., in his last sickness, made and delivered to his daughter his note, expressed to be for love and affection, and promising that she should have out of his estate fourteen hundred dollars, to be paid after his decease. *Held*, in a suit against the administrator to recover the amount of said note, that the note was void for want of a legal and sufficient consideration, and that it could not be sustained as a *donatio causa mortis*.

APPEAL from the court of probate. The plaintiff's declaration contained a special count in assumpsit and the indebitatus assumpsit counts. Plea, the general issue, and trial by the court.

The plaintiff, on trial, gave in evidence the contract on which his special count was founded, which was as follows. " For value received, and for the consideration of love and affection that I have towards Minerva Holley, I promise and agree that she shall

have and receive out of my estate fourteen hundred dollars, to be paid to the said Minerva Holley, or her heirs, after my decease.
Bristol, March 16, 1841."

(Signed)           RILEY ADAMS.

The plaintiff introduced testimony tending to prove that the said contract was executed by the said Riley Adams during his last sickness, and some two or three weeks before his death; that Minerva Holley was the daughter of the said Riley Adams, and was, at the date of the contract, and still continued to be the wife of the plaintiff; that the plaintiff had rendered to the said Riley some services in his business, and in attending upon and nursing him during his last sickness for two or three months, for which services the said Riley often, during his sickness, expressed his intention that the plaintiff should be well compensated; that, some days after the execution of said contract, the said Riley Adams, in conversation, referred to what he had done for the plaintiff, and expressed himself satisfied, and said that he intended to do liberally by him; and that the said Riley Adams, at his decease, left an estate worth ten or twelve thousand dollars, and free from debt.

The defendant introduced testimony tending to show that there was no consideration for the contract but love and affection; and the court found that such was the fact.

Judgment was rendered for the defendant. Exceptions by plaintiff.

*H. Seymour* and *P. C. Tucker* for plaintiff.

The only question in the case is, whether a note or contract of the description set forth can be enforced at law.

A note given without consideration, and deposited in the hands of a third person until after the death of the maker, was held to be valid and recoverable against an administrator. *Bowers* v. *Hurd*, 18 Mass. 427.

A promissory note, executed by a testator in his last sickness, and delivered to the payee without consideration, but with an expectation of dissolution, and intended as a gift, is valid as a *donatio causa mortis*. *Wright* v. *Wright*, 1 Cow. 598. See also 2 Kent 447. *Coutant* v. *Schuyler*, 1 Paige 316. *Snellgrove* v. *Bailey*, 3 Atk. 214.

It has been held in this state, that, where a man in prosperous circumstances, in consideration of natural love and affection, made a voluntary conveyance to his daughter of a portion of his estate, such conveyance was good and valid, even against a subsequent mortgage given to a *bona fide* creditor and for the security of a debt existing previous to the voluntary conveyance. *Brackett et ux.* v. *Waite et al.,* 4 Vt. 389.

*H. Needham* for defendant.

There being no consideration in the note or agreement, except that of love and affection, it therefore must be treated as a gift,—if it be a subject of gift,—of which there are two kinds recognized by the law, viz., *gifts,* simply so called, or gifts *inter vivos,* as they were distinguished in the civil law, and gifts *causa mortis,* or those made in apprehension of death.

1. Gifts *inter vivos* have no reference to the future, and go into immediate and absolute effect; and delivery is essential, both at law and in equity, to their validity; and in this respect it is the same, whether it be a gift *inter vivos,* or a gift *causa mortis;*—without actual delivery the title does not pass. A mere intention, or naked promise to give, without some act to pass the property, is not a gift. 2 Kent 438. *Irons* v. *Smallpiece,* 2 B. & A. 551. *Bunn* v. *Markham,* 7 Taunt. 224, [2 E. C. L. 81.] *Bryson* v. *Brownrigg,* 9 Ves. 1. *Antrobus* v. *Smith,* 12 Ib. 39. Chit. on Cont. 43.

2. A letter to executors, expressing a consent that a specified sum of money might be given to a donee, was held not a sufficient act in writing; and it was held not to be a gift of so much money in their hands, because the consent was not executed and carried into effect; and a farther act was held wanting to pass the money. *Cotteen* v. *Missing,* 1 Mad. Ch. R. 176.

3. A parol promise to pay money, as a gift, is not binding, and a party may revoke his promise. *Pearson* v. *Pearson,* 7 Johns. 27.

4. A parol gift of a note, from a father to a son, was held not to be recoverable from the executors of the father. *Fink* v. *Cox,* 18 Johns. 145. *Pitts* v. *Mangum,* 2 Bailey's S. C. Rep. 588.

5. Delivery in this, as in every other case, must be according to the nature of the thing; it must be an actual delivery, so far as the subject is capable of delivery;—the donor must part, not only with

the possession, but the dominion of the property. *Hawkins* v. *Blewitt*, 2 Esp. R. 663. *Noble* v. *Smith*, 2 Johns. 52.

6. A delivery is essential to a gift. Where the obligee gave the obligor an order for the delivery of the bond, which was not obeyed, it was held that, the gift being incomplete, it might be revoked, and that resuming possession and bringing a suit was a revocation. *Priot* v. *Sanderson*, 1 Dev. 309.

7. Neither a *donatio inter vivos*, nor a *donatio causa mortis*, can be by mere parol. The rule of law in either case is, that a delivery of the thing intended to be given is essential to the perfection of the gift. *Pennington* v. *Gittings*, 2 Gill & Johns. 208. Am. Jurist, vol. 7, p. 364, and vol. 8, p. 147.

8. The *agreement* is not, from its very terms, a subject of gift.

The opinion of the court was delivered by

HEBARD, J. There is no principle of law better understood by the profession, than this,—that a promise for the payment of money is void, unless made upon good and legal consideration. What constitutes a sufficient consideration has been the subject of more doubt and uncertainty. The only consideration for the note in this case is *love and affection ;*—the question is whether that is a sufficient consideration to be the *basis* of a contract. It is said in general terms that the consideration must be something that is beneficial to the promisor, or prejudicial to the promisee. The consideration in this case can hardly be brought within that rule. A *moral obligation* is also a good consideration for a promise,—but that holds only in cases where a prior legal obligation had existed, which, by reason of some existing rule of law, cannot now be enforced. *Cook* v. *Bradley*, 7 Conn. 57. It is therefore clear that there was no such moral obligation existing on the part of the maker of the note, as would make a legal consideration. The plaintiff has relied upon the authority of *Brackett et ux.* v. *Waite* to establish the sufficiency of this consideration. In that case *love and affection* were holden to be a sufficient consideration in a deed, for the reason that, upon the execution and delivery of the deed, the title to the land passes, and the contract is no longer executory.

But the case has been argued, mainly, upon the ground that this was a *donatio causa mortis*, and the authority of the case of *Bow-*

*ers* v. *Hurd,* 10 Mass. 427, has been relied upon by the plaintiff. But that case does not go upon the ground of a gift *causa mortis.* It expressly controverts that position. The note in that case was given under circumstances in many respects very similar to the present one,—and this case is attempted to be sustained by the authority of that case upon its similarity, rather than upon the law which governs that case.

To give a transaction the character of a *donatio causa mortis,* and make it valid, it must be made by the donor in contemplation of approaching death, it must be given to take effect only in case the donor dies, and it must be accompanied by actual delivery. If the gift is absolute, and is to take effect irrespective of the fact whether the donor lives or dies, it then becomes a *donatio inter vivos.* A gift *causa mortis* in some respects partakes of the nature of a legacy; it takes effect only upon the death of the donor, and it may be revoked and the thing taken back during his life. But, upon the death of the donor, the title to the thing becomes complete in the donee, without proving the claim before the probate court, and in this respect it differs from a will. A mere promise, therefore, to pay a sum of money is not a *donatio causa mortis,* within the meaning of the law.

The fact that this note existed in the nature of a claim against the estate, which must be submitted to be allowed before it could be available, determines the character of it. If it was a gift, if any thing was *given,* it of course was in the donee's hands, and she, for that, would have no claim against the estate. The claim, in that case, would be made by the other side. If the deceased, instead of giving this written promise, had given the money, and the *donee* had taken and kept possession of it, she would not have been under the necessity of presenting her claim to the probate court, and this gift would probably have been valid, unless impeached for some cause which has not been suggested. But this was not a gift; it was merely a *promise to give,* and required the same interpositions of law to make it available, that are required in any case.

This species of gift was recognized by the civil law at an early period in the Roman government, and then received the same construction which has since been put upon it by the common law courts; and the general principles, which govern and distinguish

Holley *v.* Adams, Adm'r.

those gifts from others, are well understood; but some controversy has arisen in relation to the subject matter of them, and mainly in relation to paper securities and choses in action, and some rather unmeaning distinctions have been made,—as between bonds and notes of hand, and between negotiable notes and those not negotiable, and in relation to this point the decisions have been somewhat conflicting. Some of the courts have held that a bond was the subject of such gift, but that notes were not, others have held that a *negotiable note* might be the subject of a gift, but that a note *not negotiable* was not, and some seem to suppose that a *note*, whether negotiable or not, might as well pass by this principle of law as a bond. And my own opinion would coincide with this last view of the case. I am unable to see any distinction in principle, or indeed any reason why a note of a third person may not as well pass by a gift *causa mortis,* as a horse, or a piece of furniture, or any other species of personal property. Notes, whether negotiable or not, are made the subject of sale and purchase, and the transactions, in relation to them, are recognized and protected by law. In the case of *Coutant* v. *Schuyler et al.,* 1 Paige 316, the chancellor repudiates the distinction between a bond and a note, and adopts the doctrine that the note of a third person is the proper subject of such gift. But I am not aware that there is any case to be found, in which it has been held that the note of the donor is a proper subject of such gift, except the case of *Wright* v. *Wright,* 1 Cow. 598, and that is not regarded as a well considered case, and is referred to in the case of *Raymond* v. *Selleck,* 10 Conn. 480, with disapprobation, and is opposed to the authority of the case of *Parish et al.* v. *Stone,* 14 Pick. 198, and is also opposed to the whole current of English authorities.

The case of *Raymond* v. *Selleck,* above alluded to, is a case that coinsides with the one under consideration in every important particular, and the court go very fully into the consideration of the subject, and come to a conclusion with which this court is well satisfied.

The doctrine of the case from the 10th Mass. before alluded to, upon which the plaintiff has relied, is, that when the maker of a note has acknowledged that it was given for value, he is not at liberty to deny it; and it was upon that ground that the recovery was

had in that case, and not on the ground that it was a gift *causa mortis.* But, although that doctrine once obtained in Massachusetts, it is not law *there* now, and I am not aware, that it was ever adopted in this state.

We think, therefore, clearly, that this note was but the evidence, which the daughter held, that the deceased, in his life time, had promised to give her the sum of money therein expressed, and to be treated like any other note that is void for want of consideration ; and to hold differently, we think, would establish a very dangerous doctrine, and one that would overturn our whole system of *testamentary disposition* of estates. It might, in some cases, put whole estates at the mercy of a few interested individuals, who happen to have access to, and who have gained the confidence of the dying man, and the transaction would be disencumbered of all the salutary checks which the law has thrown around the disposition of property by will,—there being no witnesses required, and there being no tribunal instituted by law for the purpose of testing its validity after the decease of the donor ;—and the very circumstance which sometimes renders a *will* suspicious is the *living principle* in a *donatio causa mortis.* The circumstance that a will is made just at the closing period of life, when the judgment of the testator has become weakened by sickness and the prostration of his physical powers, and when the consideration of dollars and cents must have lost much of its hold upon his affections, is always taken into the account, and weighs against the validity of a will. Whereas a *donatio causa mortis,* to have any validity, must be made in the donor's last sickness, in view and in contemplation of approaching death ; and, unlike wills, is perfected only by the delivery and possession of the gift. *Donatio perficitur possessione accipientis. Noble* v. *Smith et al.,* 2 Johns. 52.

The judgment of the county court is affirmed.