Smith et al. *v.* Kittridge, Adm'r.

CEPHAS SMITH AND JOAB SMITH *v.* WILLIAM C. KITTRIDGE, Administrator of JOAB SMITH.

A promissory note cannot be the subject of a *donatio causa mortis*, when executed by the donor.

A delivery of property as a gift, to become absolute upon the decease of the donor, but made while the donor is in health, and without reserving to him any power of revocation, cannot be supported as a *donatio causa mortis*.

A promissory note, the only consideration of which is the love and affection of the maker to the payee, will not create a valid obligation against the maker, or his representatives, either at law or in equity.

The case of *Holley* v. *Adams, Adm'r*, 16 Vt. 206, commented upon, and the decision approved.

APPEAL by the administrator, with the will annexed, of Joab Smith, deceased, from the decision of the commissioners appointed by the probate court, in allowing a claim against the estate in favor of the plaintiffs, founded upon a promissory note. In the county court the suit was referred, and the referees reported the facts as follows.

The plaintiffs presented a promissory note, signed by the testator, dated January 5, 1844, and proved its execution and delivery to them,—which note was in these words,—" Value received, I promise to pay Joab Smith, Jr., and Cephas Smith, or their order, six thousand dollars, to be paid out of my estate after my decease." The plaintiffs were sons of the testator, and the only consideration for the note was the love and affection which the testator had for them ;—and the testator intended, that the note should be a legal and valid claim against his estate. The testator died, leaving seven children, including the plaintiffs, his heirs at law, and a widow ; and his will, duly executed, was approved by the probate court, by which he directed, that his estate should be divided equally between his children. The will bore date January 5, 1844. The estate, after paying the debts and the expenses of settlement, amounted to about twenty thousand dollars.

The referees decided, that the note in suit did not constitute a legal claim against the estate, either at law, or in chancery ; but submitted the question to the court.

The county court, September Term, 1847,—HALL, J., presiding,—accepted the report, and rendered judgment thereon for the defendant. Exceptions by plaintiffs.

*C. L. Williams* and *C. K. Williams* for plaintiffs.

Upon the facts found, we contend, that the note should be allowed, as a valid and meritorious claim against the estate, either at law, or in equity.

1. In order to support this claim, it is sufficient, if it be shown to have been founded upon a meritorious consideration. *Ellis v. Nimmo,* Lloyd & Gould 333. 2 Story's Eq. § 793 *b. Fletcher v. Fletcher,* 4 Hare 67. *Clough v. Clough,* 10 Sim. 174. *Bunn v. Winthrop,* 1 Johns. Ch. R. 329. *Minturn v. Seymour,* 4 Ib. 500. *Heirs of King v. Thompson,* 9 Pet. 219. *Cook v. Long,* 1 Car. & M. 510, [41 E. C. L. 279.] A trust may be created for a wife, or a child, without any other consideration, than that of love and affection arising from the relation. *Disher v. Disher,* 1 P. Wms. 204. *Antrobus v. Smith,* 12 Ves. 39. In *Colman v. Lattell,* 3 Bro. C. C. 12, the chancellor defines a meritorious consideration to be a provision for a wife, or child, and admits, that, upon a valuable or meritorious consideration, a court of chancery would uphold a voluntary conveyance, and convert the payor into a trustee for them during his life. *Sidmouth v. Sidmouth,* 2 Beav. [17 Cond. Ch. R. 447.] *Rider v. Kidder,* 10 Ves. 360. *Murless v. Franklin,* 1 Swanst. 13. Woodeson's Lect. B. 3, p. 74, [39 Law Lib. 51.] *Williamson et ux. v. Losh, Ex'r,* [cited in Chit. on Bills 75, and in *Powell v. Graham,* 7 Taunt. 580.] *Seton v. Seton,* 2 Bro. C. C. 610. *Tate v. Hilbert,* 2 Ves. 111. *McConnell v. McConnell,* 11 Vt. 290, is a strong case of supporting a voluntary promise of a gift from a father to a son. *Lee v. Muggeridge,* 5 Taunt. 37, [1 E. C. L. 10.]

2. It is found, that the testator intended to create a valid and legal claim against his estate, and that the note was made the same day he executed his will. We contend, that such a note does constitute a valid claim against the estate of the person executing it, and that it is good, either as a gift, or, under the modern decisions, as a *donatio causa mortis.* In *Woodbridge v. Spooner,* 3 B. & A. 233, [5 E. C. L. 268,] *S. C.,* 1 Chit. R. 661, [18 E. C. L. 195,] the note, upon which the recovery was had, was intended as a sub-

stitute for a legacy; for which reason Ld. TENTERDEN, at *nisi prius*, nonsuited the plaintiff; but the court held it a valid claim. *Roffey* v. *Greenwell*, 10 Ad. & E. 222, [37 E. C. L. 99.] 4 Eccl. R. 108. Ward on Legacies 2. *Att'y Gen.* v. *Goulding*, 2 Bro. C. C. 428. *Fletcher* v. *Fletcher*, 4 Hare 67. The case of *Holliday* v. *Atkinson*, 5 B. & C. 501, [11 E. C. L. 286,] does not establish a contrary doctrine. The case of *Bowers* v. *Hurd*, 10 Mass. 427, is a very decisive authority, that a note, given instead of a legacy, may be recovered against the estate of the promissor, his estate not being insolvent; and the correctness of its decision was recognized in *Hill* v. *Buckminster*, 5 Pick. 391, and *Amherst Acad.* v. *Cowls*, 6 Pick. 427; and SHAW, Ch. J., in *Parish* v. *Stone*, 14 Pick. 198, does not intimate, that the decision was wrong. The cases of *Wright* v. *Wright*, 1 Cow. 598, and *Parker* v. *Emerson*, 9 Law Rep. 76, are also authorities in favor of a recovery upon this note. The fact, that this is a negotiable promissory note, constitutes it a valid claim. *Carr* v. *Eastabrooke*, 3 Ves. 561.

3. Why may not this note be considered a *donatio causa mortis?* The definition of these gifts, in the civil law, may be found in Cooper's Justinian; and the latter part of it, to wit, "when a man so gives, as to demonstrate, that he would rather possess the thing given himself, than that the donee should, and yet that the donee should possess it, rather than his heir," expresses their true nature. It was at one time considered, that these gifts could only be made in the last sickness, and under the apprehension of immediate dissolution; *Miller* v. *Miller*, 3 P. Wms. 356; but this distinction is now disregarded; *Hill* v. *Chapman*, 2 Bro. C. C. 612; Ward on Legacies 56. A *chose in action* was considered as incapable of being the subject of a gift; *Miller* v. *Miller, ub. sup.;* yet this is overruled. *Snellgrove* v. *Bailey*, 3 Atk. 214; 1 Ves. 436; 2 Ves. 442. *Tate* v. *Hilbert*, 2 Ves. 111, 4 Bro. C. C. 286, is far from being an authority against us. The difficulty there was, that the gift was to take effect immediately, and therefore could not operate as a *donatio causa mortis;* and on that account *Lawson* v. *Lawson*, 1 P. Wms. 441, was recognized as an authority. Lovelass on Intestate Estates 337. It is objected, to these gifts of *choses in action*, that there is no power of revocation in the life time of the donor; but this was fully explained and avoided in *Gardner* v. *Parker*, 3 Madd. 184. This last

case, and that of *Duffield* v. *Elwes*, 1 Bligh N. S. 437, may be said to have effected an important change in the law upon this subject, and induced Judge STORY impliedly to recognize the doctrine of the case of *Wright* v. *Wright*, and other New York cases. 1 Story's Eq. 606. The case of *Lawson* v. *Lawson*, 1 P. Wms. 441, as explained in *Tate* v. *Hilbert*, is very decisive of the case at bar. *Walter* v. *Hodge*, 2 Swans. 92.

In this state we have rather conformed to the rule laid down in Justinian. *McConnell* v. *McConnell*, 11 Vt. 290. The case of *Wright* v. *Wright*, 1 Cow. 598, is directly in point. The supreme court of New York, having before them the decision in *Fink* v. *Cox*, 18 Johns. 145, decided, that a note executed by a testator, in contemplation of death, and intended as a gift, was valid as a *donatio causa mortis*. This was recognized in *Coutant* v. *Schuyler*, 1 Paige 316, and *Parker* v. *Emerson*, 9 Law Rep. 76.

Of the cases relied upon as being opposed to us, that of *Fink* v. *Cox*, 18 Johns. 145, was a case of a mere gift; the paper was not executed to take effect upon the death of the donor, nor with any view to its being a portion for the child. The case of *Parish* v. *Stone*, 14 Pick. 198, as an authority, is much weakened by that of *Grover* v. *Grover*, 24 Pick. 261, and is opposed to the rule adopted in this state in *McConnell* v. *McConnell*. In *Raymond* v. *Sellick*, 10 Conn. 480, the note was not negotiable, and was payable on demand; and the case seems to have been decided principally upon the ground, that there was no reference in the note to the death of the maker. And the case of *Holley* v. *Adams*, 16 Vt. 206, is not opposed to us. There was, in that case, no instrument executed by the testator, importing any value received by him, no promise to pay, no negotiable note executed, no intention to create a valid claim against his estate; there was merely an agreement, that the plaintiff should receive a certain sum out of his estate.

*R. Pierpoint* and *C. Linsley* for defendant.

It is settled law in this state, that love and affection is not a sufficient consideration to be the basis of a contract. *Holley* v. *Adams*, 16 Vt. 206. The same was decided in *Holliday* v. *Atkinson*, 5 B. & C. 501, [11 E. C. L. 286.]

The opinion of the court was delivered by

POLAND, J. The claim in favor of the plaintiffs against the estate of the testator is attempted to be supported upon two grounds;— 1, That it is a good *donatio causa mortis ;*—2, That it is good and binding upon the representatives of Joab Smith, as a debt, which can be enforced, either at law, or in equity.

1. As to the first ground,—was this a good *donatio causa mortis ?* Under this branch of the case the first question, which presents itself, is, whether this note could be the subject of a good *donatio mortis causa* by the testator, who was himself the maker of the note. Although it was formerly doubted, whether the note of a third person could properly be the subject of such a gift, and many conflicting decisions are to be found upon that point, the current of modern authorities is, without doubt, in favor of the doctrine, that a note of a third person may be transferred in this way. Such is the view expressed by the judge who delivered the opinion of the court in the case of *Holley* v. *Adams, Adm'r,* 16 Vt. 206; and we think the opinion well founded in principle, as well as by the authority of adjudged cases. Whether the testator's own note could be the subject of such a gift is much more doubtful. In the case of *Parish* v. *Stone,* 14 Pick. 198, which was a case very similar in its features to the present case, it was decided by the Supreme Court of Massachusetts, that the donor's own promissory note, payable to the donee, could not be the subject of a *donatio causa mortis.* That case was very much discussed at the bar, and the whole subject is very closely and ably reviewed by Ch. J. SHAW, and all the authorities relating to the question examined. The same question was before the Supreme Court of Connecticut, in the case of *Raymond* v. *Sellick,* 10 Conn. 480, and, after a thorough examination, the court came to the same conclusion as that adopted by the Massachusetts court in *Parish* v. *Stone.* In the recent case in England, *Holliday* v. *Atkinson,* 5 B. & C. 501, the same doctrine is laid down by Lord TENTERDEN, in giving the judgment of the court. These cases are cited by the court in *Holley* v. *Adams, Adm'r,* with evident approbation, although the point is not expressly decided in that case.

The only express authorities in favor of the proposition, that the donor may make a good gift of his own note *causa mortis,* are cases in New York. The first case is *Wright* v. *Wright,* 1 Cow. 598.

In that case the testator made a note for $500 to the plaintiff, who was his brother, for the consideration of love and affection, and delivered it to him during his last sickness, in expectation of his own dissolution, and as a gift *causa mortis*. The plaintiff had obtained a verdict against the executor, and the case arose on a motion to stay proceedings after verdict, to enable the defendants to prosecute a motion for a new trial, on the ground that they had discovered evidence, to show that the note was a mere gift, and without consideration. Judge WALWORTH, to whom the motion was first made, denied it, upon the ground, that the defence was not a meritorious one, but merely technical, and that therefore the defendants were not entitled to be favored. From his decision it may be as well argued, that he thought the action could not be in strictness supported, as otherwise. An appeal was taken from his decision to the Supreme Court, and the defendants' motion was there denied also; and it would seem, from what is stated by the court, that they considered, that the testator's own note might be the subject of such a gift, though they do not say so in terms. The case does not seem to have undergone much discussion, or consideration, so far as can be ascertained by what appears upon the face of the report. No cases are cited, either by the counsel in argument or the court in giving judgment, and no suggestion is made by the court of any distinction between the note of the testator and that of a third person, upon which so much has been said by other courts; but it appears to have been taken for granted, that they stand alike. Under these circumstances we think the case of *Wright* v. *Wright* cannot be considered as an authority, entitled to very much consideration beyond the limits of the State of New York, and that it is fairly open to as much criticism, as it received in *Parish* v. *Stone* and *Raymond* v. *Sellick*.

In *Coutant* v. *Schuyler*, 1 Paige 316, Chancellor WALWORTH, in discussing the question, whether the note of a third person could be the subject of such a gift, mentions the case of *Wright* v. *Wright*; but he does not discuss the question raised in that case at all, nor does he either approve or disapprove of the doctrine of that case. In *Parker* v. *Emerson et al.*, decided by the Supreme Court of the City of New York, April, 1846, and reported in 9 Law Rep. 76, that court adopted and recognized the decision in the case of

*Wright* v. *Wright* and followed it in their decision. Judge VAN-
DERPOOL, however, in pronouncing the opinion of the court, does
not undertake to support the decision on principle, or by 'authority,
but places it wholly upon the ground, that he considered the decision
of their Supreme Court binding there, until reversed by the same
court. Indeed, it may be fairly inferred from his opinion, that, were
it not for that case, their decision of the question would be differ-
ent. He expressly states the rule to be differently established in
England, Massachusetts and Connecticut.

It is claimed, also, that the decision in *Wright* v. *Wright* has
been recognized in Massachusetts, since the case of *Parish* v.
*Stone*, in the case of *Grover* v. *Grover*, 24 Pick. 261. But, on ex-
amination of that case, it will be seen, that Judge WILDE, who
delivered the opinion, entirely mistook the decision in *Wright* v.
*Wright*. The point decided in the case of *Grover* v. *Grover* was,
that a valid gift may be made, *inter vivos*, of a promissory note pay-
able to the order of the donor, without indorsement ; and Judge
WILDE says, that the decision accords with that in *Wright* v.
*Wright;* but that the real doctrine of that case was not intended
to be adopted is apparent from the fact, that *Parish* v. *Stone*, which
effectually overruled *Wright* v. *Wright* in Massachusetts, is not
mentioned, either by the court, or the counsel, in *Grover* v. *Grover*.

From this cursory examination of the authorities we are satisfied,
that the weight of authority is entirely against the doctrine, that the
donor's own note can be a good gift *causa mortis ;* and we think,
also, that those decisions proceed upon a rational and sensible
ground, viz., that the donor's own note is not a gift,—that it is
merely the donor's written promise, that he *will give*, at some future
time, and, in order to be available to the donee, still requiring the
interposition of law to enforce it.

But even if the testator's note could be the subject of a *donatio
causa mortis*, there are other insurmountable objections, in this case,
to sustaining this claim on the ground of such a gift. Judge STORY,
in defining a donation *mortis causa*,—1 Story's Eq. 611,—says, " It
is properly a gift of personal property, by a party who is in peril of
death, upon condition, that it shall presently belong to the donee, in
case the donor shall die, but not otherwise." And again, page 613,
he says, " We have already seen, by our law there can be no valid

donation *mortis causa*,—1, Unless the gift be with a view to the do-nor's death,—2, Unless it be conditioned to take effect only on the donor's death by his existing disorder, or in his existing illness,—and 3, Unless there be an actual delivery of the subject of the donation. Mr. Williams, in his work on the law of Executors and Administra-tors, vol. 1, p. 544, says, "That, to constitute a *donatio causa mor-tis*, there must be two attributes,—1, The gift must be with a view to the donor's death,—2, It must be conditioned to take effect only on the death of the donor by the existing disorder." Indeed, the above definitions are but the universal language of all writers and all decisions upon this subject; and it would be but a waste of time to quote farther in its support. It will be seen at once, that, under such a definition of this kind of gifts, this case cannot be supported upon any such ground. Nothing is reported by the referees in reference to whether the testator was well or ill at the time the note was made, or that the testator had any nearer apprehension of death, than is felt by all men at any period of their lives. Neither does it appear from the report of the referees, that any power of re-vocation existed in the donor during his life time, if he changed his views in this respect; and indeed the facts reported would seem to negative any such right on his part, as the referees say, that he made and intended the note to be a valid and legal debt to the plaintiff, against his estate; which is wholly inconsistent with any power of revocation remaining in the testator.

2. This leads us to consider the other and more important ques-tion involved in the case, viz., can this note be supported as a con-tract between the parties, or a debt against the testator? The case finds, that it was the intention of the testator to make it a legal claim in favor of the plaintiff against his estate, but that the only consideration was *love and affection*. Is this a good consideration to support the note, so as to create a valid obligation against the testator, or his representatives, either at law, or in equity?—for it is doubtless true, as argued by the plaintiff's counsel, that, if the facts reported by the referees would justify a recovery, either at law, or in chancery, it was the duty of the county court, sitting as an apellate court of probate, to have sustained the action and given judgment for the plaintiff. But courts of chancery recognize the necessity of a sufficient consideration, in order to make a valid contract, with

quite as much distinctness as a court of law; and if there be any difference between the two jurisdictions in this respect, it would seem, that courts of law are the most easily satisfied. Courts of chancery, (as will be observed in reports of their decisions,) when called upon to enforce contracts *in specie,* have often refused to do so, in cases where the consideration has appeared inadequate, or not meritorious,—even when the consideration was confessedly good in law,—and have turned the party over to a court of law, to seek his remedy in damages on such contracts. The doctrine of the law, in relation to considerations, is thus laid down by a very recent and very correct writer,—Chit. on Cont. 27,—" A valid and sufficient consideration or recompense for making, or motive or inducement to make, the promise, upon which a party is charged, is of the very essence of a contract *not under seal,* at law and in equity, and must exist, although the contract be reduced to writing; otherwise the promise is void and no action can be maintained thereon."

The old division of considerations, to support deeds, viz., valuable considerations and good considerations, is familiar to every member of the legal profession; and considerations of blood, and love and affection, which come within the denomination of *good* considerations, have always been held sufficient to support a deed of conveyance, as between the parties. But, says Mr. Chitty, in discussing this subject of considerations, " We must observe, that the term good consideration, as thus applied to deeds, does not hold in relation to *simple* contracts,—to support which, relationship, natural love and affection, will not be a sufficient consideration."

In the English chancery courts another term has frequently been applied to considerations for *blood* or *love and affection,—meritorious;* and courts of equity there have often lent their aid to enforce trusts and deeds of settlement, where the only consideration was love and affection, when the object was to make provision for a wife, or child; and in such cases they have said, that it was upon the ground, that the consideration was *meritorious.* The industry of the plaintiffs' counsel has collected a great number of *dicta* of chancellors and judges, where that expression has been used; but, from a careful comparison of all those cases, it is difficult to extract anything like a definite settled rule on the subject. In England, owing to the peculiar manner in which their estates are held and

distributed, such contracts and agreements are much much more frequent, than in this country, and a much greater necessity exists, that they should be supported there, than here; and their courts of equity have gone to the farthest verge of the law, in their anxiety to sustain such contracts for the support of wives and minor children. We are not prepared to say, that a mere voluntary conveyance, or trust, might not be supported here, when made in favor of such persons, where it would not be, if made in favor of a mere stranger; but we think, that courts of chancery in this country will hesitate, before going the length they have done in some cases in England; and under our laws and system of holding and distributing property, there seems no necessity for their doing so.

The only English case, which has been brought to our attention, in which it has been held, that love and affection is a sufficient consideration to support a mere simple contract, or note, payable *in futuro*, is the case of *Williamson et ux.* v. *Losh, Ex'r*, found in a note to Chitty on Bills, p. 75. That was an action of assumpsit on a promissory note in the following words,—" I, John Losh, for the love and affection that I have for Jane Tiffin, my wife's sister's daughter, do promise, that my executors, administrators, or assignees, shall pay to her the sum of £100 of money one year after my decease, *and a cauldron and a clock, a wainscot chest, and a bed and bedclothes, seven pudden dishes*, as witness my hand this 16th day of February, 1763. Witnessed by us, A. B. and C. D. ;"—a verdict was taken for plaintiff, and a case reserved. The court held, that, the instrument being in writing and attested by witnesses, the objection of *nudum pactum* did not lie, and gave judgment for the plaintiff. This case was never reported, and the case, or at least the ground of the decision, was soon after denied, in *Rann* v. *Hughes*, 7 T. R. 350, n., and the case seems never after to have been followed, or even quoted as an authority, in England; and Mr. Chitty speaks of the doctrine of the case as one which *formerly* prevailed, and we think that case cannot be considered as law, even in England.

The case of *Bowers* v. *Hurd*, 10 Mass. 427, has been very urgently pressed upon us, as an authority to sustain the present action. That was assumpsit on a note given by the defendant's intestate to the plaintiff, for love and affection, and in lieu of a legacy,

as she desired to avoid the expense of a will. The case states, that the intestate expressed a strong anxiety to leave something to the plaintiff, as she had been very kind and attentive to her; and she felt under obligation to give her something. A verdict was taken for the plaintiff, and the case was carried to the supreme court. The court sustained the verdict, and put the case mainly upon the ground, that, inasmuch as the note was expressed for value received, the defendant was not at liberty to show, that there was no consideration for the note, when given. The same court, however, in the subsequent case of Hill v. Buckminster, 5 Pick. 390, have expressly overruled the doctrine, upon which the case of Bowers v. Hurd was decided; although Ch. J. Parker takes occasion to say, that that case was decided right, but should have been placed on other ground; but he does not state upon what ground it should have been placed;—and Ch. J. Parker, in a subsequent case, Amherst Academy v. Cowls, 6 Pick. 427, repeats what is said in Hill v. Buckminster. In the case of Parish v. Stone, 14 Pick. 198, which was an action upon a note, executed by the defendant's testator, for $600, to the plaintiff, (who was his son-in-law,) payable in one year after his death, the note was given, as appeared at the trial, as well for the purpose of compensating the appellee for certain services he had previously rendered, at the request of the testator, as of equalizing more effectually the distribution of the testator's property among his children. The jury, under the direction of the court, found a verdict for the plaintiff to the extent of his services included in the note; and the case having been carried to the supreme court, it was, after a very full examination, determined, that there was not any sufficient consideration for the balance of the note, and that the plaintiff could not recover. The supreme court in Connecticut have established the same doctrine, in a similar case, after full argument and consideration. Raymond v. Selleck, 10 Conn. 480.

This same question has recently been before this court, in the case of Holley v. Adams, Adm'r, 16 Vt. 206. That was an action on a note executed by the defendant's intestate to the plaintiff's wife, (who was his daughter,) during his last sickness, and a few days before his death. The note was in the following words,— " For value received, and for the consideration of love and affection that I have towards Minerva Holley, I promise and agree that she

shall have and receive out of my estate fourteen hundred dollars, to be paid to the said Minerva Holley, or her heirs, after my decease.

Bristol, March 16, 1841. (*Signed*) RILEY ADAMS."

This court held in that case, that the note was void for want of a legal and sufficient consideration. It is attempted to distinguish the present case from the case of *Holley* v. *Adams,* upon the difference in phraseology of the two instruments; and it is said, that the writing, or note, in *Holley* v. *Adams,* is more in the nature of a testamentary disposition of property, than a note; but on a comparison of the two instruments we see very little difference in their legal effect; neither of them, though in the general form of a note, contemplated any payment, or any effect upon the maker's estate, or property, until his decease; and both, in fact, were given to affect the distribution of the maker's property after his decease, and in that sense may be said to be merely testamentary papers. The decision in *Holley* v. *Adams* does not go upon any such distinction, but decides, that such a paper cannot be a good *donatio causa mortis,* and is not recoverable as a debt, for want of sufficient consideration.

The case of *Holley* v. *Adams* seems to have been decided upon good consideration; and it deserves to be remarked, that both the present chief justice of this court and the late chief justice were present and concurred in that decision;—and even if we were not entirely satisfied with the grounds of that decision, we should be very reluctant to decide this case so as to conflict with the doctrine of that case. But, on a careful revision of that case, we are satisfied, that it was decided in accordance with well established principles and authorities, and that is a full and complete authority for this case. We are also satisfied, that, as a rule of policy merely, it is better to require, that the provisions of our statute, in relation to testamentary dispositions of property, should be observed, and that, if such obligations as the one attempted to be supported in this case were to prevail, they would lead to the mischievous results anticipated by the judge, who gave the opinion in the case of *Holley* v. *Adams.*

We have felt constrained to give this case a much more full and critical examination, than we should have done after the recent decision in *Holley* v. *Adams,* in consequence of the very great re-

32

search and ability, with which this case has been presented and argued.   Upon the whole case we are fully satisfied, that this note cannot be supported upon any of the grounds, on which the plaintiff's counsel place it, and the judgment of the county court, which was for the defendant, is affirmed.

NOTE BY POLAND, J.   Since the opinion in the above case was furnished to the reporter, the case of *Craig et al., Ex'rs,* v. *Craig et al.,* 3 Barbour's N. Y. Chancery Reports 76, has come under my observation, where the same doctrine, held by the court in the above case, is fully established.   Chancellor WALWORTH reviews all the cases upon the subject at great length, and the case of *Wright* v. *Wright,* 1 Cow. 598, is distinctly overruled.   The same question has also been raised, and decided in the same way by the supreme court of the fifth judicial district in New York, in the case of *Harris* v. *Clark,* 2 Barbour's Sup. Court Rep. 94 ; which decision, I am informed, has been affirmed by their court of appeals, but not yet reported.   I find also that the same doctrine has been established in the state of New Hampshire.   *Cobb* v. *Sawyer,* 6 N. H. 386.