## HARRIS *vs.* CLARK, &c. executors.

The executory promise of a donor, e. g. his own draft upon a third party in favor of the donee, intended as a *donatio mortis causa,* is not valid, and the donor can not maintain an action upon it against the donor's representatives.(*a*) The case of *Wright* v. *Wright,* (1 *Cowen,* 598,) holding a contrary doctrine, overruled.

To render a gift valid, the thing given must be delivered to the donee, or it must be placed in his power by delivery of the means of obtaining possession. And in this respect, there seems to be no distinction between gifts *inter vivos* and gifts *mortis causa.*

Any instrument executed by the donor to the donee operating as an assignment or transfer of the donor's funds in the hands of a third party, constitutes, it seems, a sufficient delivery to uphold a gift *mortis causa.*

But a draft of the donor, not accepted, for a specific sum, upon a third person who has in his possession funds of the donor, does not operate as an assignment or appropriation to the donee of the sum mentioned in the draft, and therefore is not valid as a gift *mortis causa. Per* RUGGLES, GARDINER, JEWETT and HOYT, Js. Contra, CADY, SHANKLAND and STRONG, Js.(*b*)

The distinction between a bill of exchange and a check considered. *Per* RUGGLES, J.

LEVI HARRIS brought assumpsit in the supreme court, against Ralph Clark, Eneas P. Clark and William H. Bradford, executors of the last will and testament of Sidney Smith, deceased. The first count in the declaration was upon a draft for $30,000, dated July 9, 1844, drawn by the deceased upon R. Clark & Co. to the order of Nancy Harris, and by her endorsed to the plaintiff. The count averred the due presentment of the draft, the non-payment thereof by the drawees, and notice to the defendants, concluding with an allegation of the liability of the defendants *as executors of the drawer,* and a promise by them as such to pay. The second count averred that the deceased in his lifetime was indebted to the plaintiff for money lent and advanced, had and received, &c. concluding with an averment

---

(*a*) On this part of the case, the reporter is not informed that there was any diversity of opinion among the members of the court, and the doctrine is therefore stated without qualification.

(*b*) BRONSON, J. did not hear the argument, and took no part in the decision.

of a promise to pay by the deceased.   The third and last count was on an account stated between the deceased and the plaintiff, and averred a promise by the deceased to pay the amount found due on such accounting.   Plea, non-assumpsit.

The cause was tried before GRIDLEY, C. J. at the Otsego circuit, in April, 1846, and on the trial the plaintiff gave evidence tending to establish the genuineness of a draft as follows :

" Mess. R. Clark & Co.

Please to pay Nancy Harris or order, thirty thousand dollars, and place the same to my account.

New-York, 9th July, 1844.            SIDNEY SMITH.

(Endorsed.)   Pay to the order of Levi Harris.

NANCY HARRIS."

The draft was made in New-York during the last illness of Sidney Smith, and was sent by him in a letter of the same date to his sister, Mrs. Nancy Harris, (the wife of the plaintiff,) who resided at New Berlin, Chenango county.   In the letter, Mr. Smith expressed his intention to visit Mrs. Harris in a few days, stated that he did not like the will which he had made, and that he should alter it as soon as he reached her residence, and then added, " and for fear I should not reach home, as I am very feeble, I will give you an order on R. Clark & Co., for thirty thousand dollars, which they will pay you, if I should be taken away, as I have funds in their hands to a large amount ; and I hope you will make good use of the money."   Mr. Smith died in New-York, July 30, 1844.   At the date of the draft the defendants, Ralph Clark and Eneas P. Clark, constituted the firm of R. Clark & Co. and *they had funds of Mr. Smith in their hands more than sufficient to pay the draft.*   He had been their former partner in mercantile business in the city of New-York.   The other executor (the defendant Bradford) had never belonged to the house of R. Clark & Co.   The draft was presented to Ralph Clark and Eneas P. Clark on the 9th day of December, 1845, and payment refused, of which notice was given to the defendants, as executors, on the same day.

The evidence being closed, the defendants moved for a non-suit on the following, among other grounds :   1. That the draft

was not given upon any valuable or other sufficient considera-
tion.    2. That the draft, if given and intended to operate as a
simple donation of the sum of money therein expressed, was a
donation of such sum by reason of death, and was ineffectual
and void, inasmuch as the money so intended to be given, was
not in any way delivered to the intended donee.    3. That the
said draft, if intended to operate as a legacy or testamentary
disposition of the sum of money therein expressed, was ineffect-
ual and void, because not subscribed and declared in the presence
of two attesting witnesses, in the manner prescribed by the stat-
ute, for the making and attesting of last wills and testaments.
4. That the order or direction for the payment of money, contained
in the draft or bill of exchange, was revoked by the death of the
drawer.    5. That there was no pecuniary or other consideration
which would entitle the said plaintiff to recover upon any of the
counts in the declaration.

The motion for a nonsuit was denied and the cause submitted
to the jury, who found a verdict for the plaintiff.    A case was
made with liberty to the supreme court to order judgment of
nonsuit, if in point of law that court should be of opinion that
the plaintiff was not entitled to recover, and with leave to either
party to turn the case into a bill of exceptions.    The supreme
court sitting in the fifth district on argument of the case held,
that the plaintiff could not recover; (*see* 2 *Barb. Sup. Court
Rep.* 94 ;) and after judgment of nonsuit, the plaintiff brought
error to this court.

*J. C. Spencer*, for plaintiff in error.    I. The plaintiff repre-
sents the interest of his wife, and if she being single could have
recovered the money, he may recover it in his own name,
whether it is to be regarded as money received on her account
during marriage ; (*Abbot and wife* v. *Blofield, Cro. James*,
644 ; *Bridgood* v. *Way*, 2 *Sir W. Black.* 1236 ;) or whether
it be regarded as an obligation passed to the wife alone during
coverture.    (*Howel* v. *Maine*, 3 *Levinz*, 403 ; *Philliskirk* v.
*Pluckwell*, 2 *Maule & Selwyn*, 393 ; *Clancy on Husband and
Wife, p.* 5.)

II. The draft was not revoked by the death of the drawer. Although this point does not appear to have been taken before the supreme court by the defendants' counsel, yet as it was presented in the fourth ground for a nonsuit at the trial, it may be proper to notice it. The doctrine of revocation by death does not apply to any instrument coupled with an interest. (*Story on Agency,* §§ 483, 489, *and the authorities cited by him ; Cutts* v. *Perkins,* 12 *Mass. Rep.* 209.) Whether Mrs. Harris had an interest or not, in the money directed to be paid, depends on the question whether there was a valid gift ; if it was a good gift it was effectual ; or if it was a valid *donatio causa mortis,* then the death, so far from revoking, was the very fact that gave it effect. So that this point is dependant on the main question in the case.

III. This is not a legacy, and does not require a testament according to the statute. Legacies are not delivered by the testator but by the executor. A gift *causa mortis* takes effect from delivery by the donor. It is claimed against the executor and not through him. An interest passes by the gift, defeasible by the donor surviving, whereas a legacy passes no interest whatever until the death of the testator. ( *Williams' Executor,* 505 ; *Story's Eq. vol.* 1. § 606.) The expression in the letter of July 9, that "they will pay, if I should be taken away," was explanatory of the gift, and to apprize Mrs. Harris of her rights. If there was a delivery by sending the draft, and the gift was thus complete, the letter did not affect it. It related to the time of payment, and did not prevent the gift vesting. (*See Williams on Executors,* 767, *&c.*) The question on this point, like the other, depends on the main question in the cause, whether there was a delivery by the donor so as to vest a present interest.

IV. The draft was given upon a sufficient consideration to support an assignment or transfer of property. Considerations are valuable or good, and either is sufficient. (2 *Black. Com.* 297.) "A good consideration is that of blood or of natural love and affection, when a man grants an estate to a near relative, being founded on motives of generosity, prudence, and natural

Harris *v.* Clark.

duty." A good consideration is that of blood or natural affection, and a gift made for such a consideration, ought certainly to prevail, unless it be found to break in upon the legal rights of others, (meaning creditors and purchasers.) *Fonbl. Eq.* 271, *b.* 1, *ch.* 4, § 12.) In *Townsend* v. *Wyndham,* (2 *Ves.* 11,) Lord Hardwicke says, " If there should be voluntary conveyance of real estate or chattel interest, by one not indebted at the time, and there be no evidence or badge of fraud to deceive subsequent creditors, that will be good." The whole doctrine of voluntary settlements depends upon the validity of such a consideration. A few only of the numerous cases in our books are referred to, where their validity has been recognized, by being assailed only on the ground of being fraudulent as against creditors. ( *Verplank* v. *Sterry,* 12 *John.* 536 ; *Reade* v. *Livingston,* 3 *John. Ch.* 492 ; *Seward* v. *Jackson,* 8 *Cowen,* 435, 436, &c.) A voluntary conveyance is good against the party making it, though cancelled, and against all subsequent voluntary conveyances, whether by deed or by will. (1 *Maddox's Chan.* 325.) In *Grover* v. *Grover,* (24 *Pick.* 261,) Wilde, J., discussing the question of valuable considerations being necessary to a gift of a promissory note, says, " Where the gift is complete, gifts *inter vivos* are executed contracts," and he places them on the same footing as assignments for a valuable consideration. The same doctrine must apply to a *donatio causa mortis* where it has become complete by delivery and the death of the donor.

The draft was intended, by the donor, to operate as a donation of the money therein specified, and which money was then in the hands of the drawees, subject to the disposition of the donor.

V. The draft was a sufficient instrument to pass and did pass to the payee a present interest in the funds of the drawer, then in the hands of the drawees, to the amount specified in it. All that the law requires to pass personal property is a memorandum in writing signed by the party. (2 *R. S.* 136.) Why should a disposition of personal property for a good consideration, or voluntary, require any other solemnities than where the con-

sideration is valuable? The policy of the law is to give effect to the intent of the owner; prescribing forms to guard against fraud and perjury, but not to defeat the intent. This draft is an actual appropriation and differs from a promise to pay or to give.

The rule that prevents courts from enforcing a voluntary promise without valuable considerations, is contrary to the law of nature. (*Grotius, ch.* 11, *lib.* 2; *Puff. b.* 3, *ch.* 5, § 6.) It is contrary to the civil law. (1 *Fonbl.* 340, *note to ch.*5, *b.* 1, § 1; *Noble* v. *Smith,* 2 *John.* 55.) Blackstone (2 *Com.* 446,) says that a voluntary note may be enforced. *Seton* v. *Seton,* (2 *Bro. Ch. Ca.* 610;) *Woodbridge* v. *Spooner,* (1 *Chit.* 661;) *Bowers* **B/** v. *Hurd,* (10 *Mass. Rep.* 428;) *Wright* v. *Wright,* (1 *Cowen,* 598,) are cases in which such promissory notes have been maintained; and in the following cases, moral considerations, were held sufficient to sustain an action on a note. (*Lee* v. *Muggridge,* 5 *Taunt.* 36; *Gibb* v. *Morrill,* 3 *id.* 311.)

But without relying on these cases, which are undoubtedly against the current of authority, we maintain that a draft or bill of exchange is a very different instrument from a note, and may, when so intended, operate as an assignment or appointment. Giving a bill is an assignment of so much property, which becomes money had and received to the use of the holder of the bill. (*Tatlock* v. *Harris,* 3 *Durn. & E.* 182, referring to *Grant* v. *Vaughan.*) Chitty on Bills, *p.* 1, defines it as "an assignment to a third person of a debt due to the person drawing the bill from the person on whom it was drawn." Similar definition by Ch. J. Bronson in *Griffiths* v. *Read,* (21 *Wend.* 504.) Checks are bills of exchange. (*Cruger* v. *Armstrong,* 3 *John. Cas.* 5.) A request written underneath a note to pay the amount, is operative as a bill of exchange. (*Leonard* v *Mason,* 1 *Wend.* 522.) An order to pay funds in the hands of the drawee is an assignment of such funds, to the extent of the order, although not accepted, but a promise is made to pay when funds should be received. (*Peyton* v. *Hallet,* 1 *Caines,* 379, *recognized and confirmed in McMenomy* v. *Peters,* 3 *John.* 82.) An order to pay the amount of freight earned by the drawer, is an

assignment of the fund *ipso facto.* (*Cutts* v. *Perkins*, 12 *Mass.* 206.) The following cases recognize the same principle, in various forms. (*Powel* v. *Gordon*, 2 *Esp.* 735; *Rowe* v. *Dawson*, 1 *Ves. sen.* 331; *Yeates* v. *Groves*, 1 *Ves. jr.* 280; *Lett* v. *Morris*, 4 *Simons*, 607.) The cases of *Luff* v. *Pope*, (5 *Hill*, 417,) and *Quin* v. *Hansford*, (1 *id.* 85,) do not affect the question between drawer and payee. *Weston* v. *Barker*, (12 *John.* 276,) is the same in principle with the present case. This case is recognized in 1 *Hill*, 85, above cited; of the same character is the case of *Clark* v. *Adam*, cited by Buller, J. in *Master* v. *Miller*, (3 *D. & E.* 343.)

A bill of exchange does not lose its quality of being an assignment because it has other peculiarities, and as between drawer and payee it is complete by delivery upon sufficient consideration, whatever may be the rights of the payee, as against the drawee. This is more clearly shown by the decisions, 1. That if paid away for value, the holder may certainly recover. (*Tate* v. *Hilbert*, 2 *Ves. jr.* 118.) 2. If accepted by the drawees, their payment of it would have been a complete defence to the drawer. (*Atkinson* v. *Manks*, 1 *Cowen*, 706; *Griffith* v. *Read*, 21 *Wend.* 502.) There can be no difference between a bill or a draft given for a valuable consideration, and one for a good consideration, except so far as creditors are concerned. The right to make a gift of a large sum of money, of a stack of grain, or a growing crop, or any thing not capable of manual delivery, must be denied absolutely, or the sufficiency of a written assignment must be admitted. Blackstone (2 *Com.* 440) says, gifts of chattels personal may be made either in writing, or by word of mouth, accompanied by delivery of the thing. In *Hooper* v. *Goodwin*, (1 *Swanst.* 486,) the master of rolls says, that a gift supposes some act to pass the property, if the subject is capable of delivery; if a chose in action, a release or equivalent instrument. In *Irons* v. *Smallpiece*, (2 *Barn. & Ald.* 552,) Chief Justice Abbott says, to transfer property by gift, there must be either a deed or instrument of gift, or there must be an actual delivery of the thing to the donee. In *Tate* v. *Hilbert*, (2 2 *Ves. jr.* 120,) the lord chancellor says, it is not difficult to con-

ceive that a gift may be by deed or by writing. The same principle is recognized in *Adams* v. *Hayes*, (2 *Iredell*, 361.)

The cases upon voluntary settlements, and voluntary trusts, show that a settlement or assignment is executed by the party doing all he can to perfect the gift, and that a trust is always created by a clear manifestation of the intent to give. In *George* v. *Howard*, (7 *Price*, 646,) the intestate transferred stock to the name of himself and the husband of a niece, with proof of his declaration of an intent to give the stock in consideration of affection. Held a valid gift of the stock. *Tye, ex parte*, (18 *Ves.* 149,) is a similar case. *Christ's Hospital* v. *Budgin*, (2 *Vern.* 683,) was the case of mortgages taken in the name of husband and wife. In *Fortesque* v. *Barnet*, (3 *Myl. & K.* 36,) a voluntary assignment of a policy of insurance on his life was made by the defendant for the benefit of his sister and her children, and delivered to the trustee, but he kept the policy, and afterwards surrendered it. Held that this constituted a complete gift, because nothing remained to be done by the grantor to complete the title. In *Wheatly* v. *Purr*, (1 *Keen*, 551,) a party having a sum of money in the hands of bankers, took their promissory note to pay her that sum as trustee, which she retained in her own hands; held a complete declaration of trust. *Thorpe* v. *Owen*, (5 *Beav.* 524,) is a similar case of a trust upon an admission by the party, that money had been invested by her in trust for another. In *Essrain* v. *Seigling*, (2 *Hill's S. C. Ch. Rep.* 600,) the legatees in a will wrote to the executors to keep $1000 in their hands for their trouble; held a good appropriation, and executors allowed to retain it. The rule in equity that an order upon a debtor amounts to an assignment, without the assent of the debtor, is stated and explained in 2 *Story's Eq. p.* 308, § 1044; *Story's Conf. of Laws*, § 396; *Muir* v. *Schenck*, (3 *Hill*, 321.)

These principles have been actually applied to the very case of a donation *causa mortis* in *Lawson* v. *Lawson*, reported in 1 *Pierre Williams*, 442; in 2 *Eq. Cases Abridged*, 575; and explained in *Tate* v. *Hilbert*, 2 *Vesey, jun. at p.* 121, where an order on a goldsmith for £100 to a wife to procure mourning,

was sustained as a valid gift and transfer of the money. This case has never been overruled or denied. Lord Hardwicke, in *Ward* v. *Turner*, (2 *Ves. sen.* 441,) does not impugn it. And in *Tate* v. *Hilbert*, with what Lord Hardwicke had said, before him, the chancellor expressly confirms it and reconciles the difficulties of Lord Hardwicke by a fuller statement of the facts. The master of the rolls, Sir T. Plumer, in *Walter* v. *Hodge*, (2 *Swans.* 92, 103,) explains Lord Hardwicke's difficulty, and himself recognises *Lawson* v. *Lawson ;* and it is recognized by all the elementary writers. (1 *Fonbl.* 289 ; 1 *Wms. Exr.* 504 ; 2 *Kent's Com.* 445.)

VI. The transmission of the draft, and its receipt, was all the delivery of the sum of money specified, which the circumstances permitted or required ; and rendered the gift complete and executed ; but if there was any question of the fact of delivery, it should have been submitted to the jury. Dangers to be guarded against in sanctioning gifts, particularly those made *mortis causa*, are 1st, as to creditors ; 2d, not to violate the statute of wills. Choses in action not being assignable, (2 *Black.* 442, 396,) the courts limited gifts to such chattels as could pass by delivery ; (*Miller* v. *Miller*, 3 *P. Wms.* 356 ; *Ward* v. *Turner*, 2 *Ves. sen.* 442 ;) Lord Hardwicke recognized the doctrine but excepted a bond. In *Duffield* v. *Elwes*, (1 *Sim. & Stu.* 229,) it was held that a bond and mortgage could not be the subject of a gift. But this was reversed by the house of lords. (1 *Bligh's New Rep.* 514.) But the law is entirely changed, and a chose in action is now as capable of assignment by way of gift, as by way of sale for valuable consideration. A bond is the subject of gift, by mere delivery of the instrument. (*Blount* v. *Blount*, 1 *Ves. jr.* 546 ; *Gardner* v. *Parker*, 3 *Madd.* 184.) A bond and mortgage also. (1 *Bligh's New Rep.* 514, *above quoted.*) Lottery tickets. (*Grangiac* v. *Arden*, 10 *John.* 293.) A promissory note of a third person. (*Constant* v. *Schuyler*, 1 *Paige*, 318.) A promissory note payable to the order of the donor, by delivery without endorsement by him. (*Grover* v. *Grover*, 24 *Pick.* 261.)

So that now the rule is, that the delivery of the means of re

ducing to possession the thing given, is equivalent to the delivery of the thing. The cases are summed up and principle stated in *Parish* v. *Stone,* (14 *Pick.* 206,) by Ch. J. Shaw, who says the gift of the instrument that shows the existence of a right to money and affords the means of reducing it to possession, is a gift of the money. In *Ward* v. *Turner,* (2 *Ves. sen.* 441,) Lord Hardwicke would not allow the delivery of *receipts* for South Sea stock given by a third person in whose hands the stock was, "because they were no evidence of the thing or *part of the title to it ;*" yet, in reference to the case of *Jones* v. *Selby,* (*Prec. in Chan.* 300,) where the donor had given his wife a hair trunk and handed her the key, in which, after his death, was found an exchequer talley for £500 ; he says that "amounted to the same thing as the delivery of the possession of the tally. The delivery of the key of the place where bulky goods are, has been allowed as delivery of the possession, because it is the way of coming at the possession." In *Snellgrove* v. *Bailey,* (3 *Atk.* 214,) he puts the case of a delivery by the cestui que trust of a bill of sale of a chattel taken in the name of a trustee, as a good *donatio mortis* of the equitable property. In *Smith* v. *Smith,* (2 *Strange,* 955,) the delivery of the key of a room in which furniture was, was held a good delivery of the furniture, to complete the gift of it. In *Slanning* v. *Style,* (3 *P. Wms.* 337,) a husband allowed his wife to retain the avails of sales of eggs, &c., which he borrowed of her ; held to be a valid gift of the amount of the sales, and the amount allowed to the wife. In *Gardner* v. *Gardner,* (22 *Wend.* 531,) in the court of errors, the husband held his wife's bond for money advanced to improve her separate estate, which he threw into the fire, telling her the money was hers. Held a valid gift of the debt. *Blake* v. *Jones,* (2 *Hill's S. Car. R.* 629,) decides that whatever would authorize a donee to take possession without committing a trespass, would be a sufficient delivery of a gift. In *Grangiac* v. *Arden,* (10 *John.* 293,) a father wrote his daughter's name on a lottery ticket, but retained possession of the ticket ; and after it had drawn a prize declared that the money belonged to his daughter. Held a valid gift of the money. In

*Grover* v. *Grover*, (24 *Pick.* 261,) a gift by the donor, of a promissory note payable to his order without endorsement or other writing, was held valid.

This view is supported by the analogous rule respecting the delivery of goods to vest the possession and interest, so as to place them at the risk of the vendee ; or to prevent stoppage in transitu.  In *Shindler* v. *Houston*, (1 *Denio*, 52,) Jewett, J. defines delivery to be of the thing, or symbolical, where it does not admit of actual delivery.  It must be such as the nature of the case admits.  In *Hollingsworth* v. *Napier*, (3 *Caines*, 185,) an order on a storekeeper to deliver goods, was held a sufficient delivery of them.  In *Smith* v. *Chance*, (1 *Barn. & Ald.* 775,) if the vendor puts it in the vendee's power to take away the goods, it is a delivery.  *Noble* v. *Smith*, (2 *John.* 52,) admits that delivery may be symbolical or by equivalents to complete a gift. All that should be required is such an instrument as indicates the thing given, and enables the donee by force of the instrument to reduce it into possession ; and the most usual and convenient instrument for that purpose is the one used in this case. If there was any question as to the fact of a delivery of the thing given, it should have been submitted to the jury.  (1 *Bligh's N. R.* 531 ; *Blount* v. *Barrow*, 1 *Ves. jr.* 546 ; *Hills* v. *Hills*, 5 *Lond. Jurist*, 1185 ; *Grangiac* v. *Arden*, 10 *John.* 296.)

VII. The draft being a sufficient instrument to transfer the title of the donor to the money, being accompanied by a delivery, constituted a valid appointment of the funds to the use of Mrs. Harris, whether it be called a gift *inter vivos*, or a *donatio causa mortis*, or simply an assignment, which entitles her or her representative to claim those funds in whosesoever hands they may be.  This results from the foregoing propositions, that there is a sufficient consideration, and that the draft itself, as between the drawer and payee, was a complete transfer of the fund ; and that at all events, the delivery of the draft was a delivery of the money.  The requisites to a gift *inter vivos*, and to a *donatio mortis causa* are the same, and the only difference between them is, that the latter is revocable by the donor

and is actually revoked by his living. ( *Walter* v. *Hodge,* 2 *Swanst.* 97 ; *Irons* v. *Smallpiece,* 2 *Barn. & Ald.* 552 ; *McDowell* v. *Murdock,* 1 *Nott & McCord,* 287 ; *Reid* v. *Calcott, id.* 592.) When therefore, a *donatio mortis causa* has become perfect by the death of the donor without having revoked it, it is to be judged by the same rule, to ascertain whether dominion over it has passed, as in cases of gifts. And hence, to ascertain this point which is common to both, the cases decided in reference to either species of gift, have been used indiscriminately.

VIII. And these funds being in the hands of the executors of S. Smith, the plaintiff is entitled to recover them as money legally and equitably due to his wife, *without reference to the liability of the testator as drawer of the draft* upon the implied promise to guaranty its payment. The supreme court has decided this case as if it were an action upon the draft, against the executors of the drawer, upon his promise to pay if the acceptor did not. I forbear discussing that question, as not necessary to maintain this suit, as the effect of the draft and its delivery, as an assignment, is independent of the technical question of liability as a drawer.

In *Clark* v. *Pinney,* (6 *Cowen,* 296, 299,) Ch. J. Savage says, "The general proposition is that this action for money had and received lies in all cases where the defendant has in his hands money which *ex equo et bono* belongs to the plaintiff." ( *Ward* v. *Evans,* 2 *Ld. Ray.* 930.) In *Grant* v. *Vaughan,* (3 *Bur.* 1516, *at p.* 1529,) the above case in Raymond is cited and approved ; and Yates, J. says, " Whoever has money in the hands of another may bring such an action (*indebitatus assumpsit*) against him." In *Sturgis* v. *Allis,* (10 *Wend.* 354,) *Wisner* v. *Bulkey,* (15 *id.* 322,) *Turton* v. *May,* (8 *id.* 561,) the principle is repeated and applied in different cases. In *Cruger* v. *Armstrong,* (3 *John. Cas.* 5 *to* 10,) the rule was applied to admit a check as evidence against the drawers, under the money counts. *Pierce* v. *Crafts,* (12 *John.* 90 *to* 95,) adopts and affirms the same principle. Platt, J. in this case says, "It is not true that the action for money had and received can be grounded only

Harris *v.* Clark.

on privity of contract. It lies against the finder of money lost. It is the proper action to recover money obtained by fraud or deceit. In these and other cases there is no privity of contract." It might be added that there is no contract but such as the law raises in all cases *ex equo et bono.* See *Kitchen* v. *Campbell,* (3 *Wilson,* 307,) "there is a supposed privity of contract between the person whose money it lawfully is, and the person who has got it." (*See also Norton* v. *Coons,* 3 *Denio,* 134; *Wright* v. *Butler,* 6 *Wend.* 290, *opinion of chancellor.*) *James Smith* v. *George Smith,* (7 *Carr. & P.* 401,) 32 *Com. Law Rep.* 557,) was a suit brought by a son against the administrator of the father for a watch given to him by his father while under age. A verdict was given for the defendant, which was set aside by the court on the ground of competent testimony having been excluded. Thus the principle of the action was sustained.

If then, there was a valid appointment by way of gift in this case, which passed a present interest to the donee, and became perfect and complete by the death of the donor without revoking it, the plaintiff is as much entitled to the money given as the son was to the watch; and that money being in defendants' hands as executors, they are as much bound to pay it over as if it had been a specific article like a watch. Where a court of equity would compel the payment of money, it may be recovered by action of assumpsit. ( *Wright* v. *Butler,* 6 *Wend.* 290; 20 *John.* 367.)

In *Norton* v. *Coons,* (3 *Denio,* 130–134,) a case of contribution by a surety, where the circumstances repelled the idea of a promise to contribute, Ch. J. Bronson says, "what was heretofore an equitable has become a legal obligation, and where there is a legal right to demand a sum of money, and there is no other remedy, the law will, for all the purposes of a remedy, imply a promise of payment." It was upon this principle that, in *Granqiac* v. *Arden,* (10 *John.* 293,) the plaintiff recovered under the money counts against the donor of the lottery ticket, the money which it drew.

The first count in the declaration sufficiently states the cause of action and the liability of the defendants; the facts have the

like effect as if proved under the money counts. *Bachelder* v. *Fiske*, (17 *Mass. R.* 468 ;) confirmed by Jewett, J. in *Bradley* v. *Burwell*, (3 *Denio*, 66–68.) And a recovery may be had upon those facts without reference to the technical liability of the testator as drawer. The instrument being on its face a bill of exchange, a consideration is implied and need not be averred. (*Chit. on Bills*, 68 ; *Rogers* v. *Morton*, 12 *Wend.* 487 ; *Bank of Troy* v. *Topping*, 13 *id.* 557.)

The indorsement by the wife was valid. (*Miller* v. *Delamater*, 12 *Wend.* 435.) The variance between the instrument declared on and the one in proof is immaterial. (*Every* v. *Corwin*, 6 *Cowen*, 360 ; *Wardell* v. *Pinney*, 1 *Wend.* 217 ; *Boorman* v. *Johnson*, 12 *id.* 577 ; *Potter* v. *Hopkins*, 25 *id.* 417 ; *East Boston Timber Co.* v. *Persons*, 2 *Hill*, 126.)

But if neither the special count nor the money counts are exactly adapted to the facts proved, the court, if the plaintiff is entitled to recover on the merits, will, on reversing the judgment and directing a new trial, allow amendments to be made to adapt the declaration to the facts. *Holmes* v. *Seeley*, (17 *Wend.* 75,) is quite analogous. (*Fanning* v. *Farley*, 4 *Denio*, 263 ; *Jackson* v. *Tuttle*, 6 *Cowen*, 590; *Pease* v. *Morgan*, 7 *John.* 468 ; *Code of Procedure*, §§ 173, 473 ; *Laws of* 1849, *ch.* 439, § 2, *sub.* 1.) Or will allow the court below to amend. (*Reed* v. *Drake*, 7 *Wend.* 345 ; *Hill* v. *Stocking*, 6 *Hill*, 291.)

*C. O'Conor*, for defendants in error. I. An immediate delivery of the subject into the possession of the donee, is necessary to the validity of a gift. (2 *Black. Com.* 441 ; 2 *Kent's Com.* 438 ; *Ward* v. *Turner*, 2 *Ves. sen.* 440; *Tate* v. *Hilbert*, 2 *Ves. jr.* 112 ; *Hawkins* v. *Blewitt*, 1 *Esp. N. P.* 663 ; *Bunn* v. *Markham*, 7 *Taunt.* 224 ; *Irons* v. *Smallpiece*, 2 *B. & Ald.* 553 ; *Farquharson* v. *Cave*, 2 *Coll. Rep.* 356, 367, *and cases in notes ;* 7 *Smedes & Marsh*, 432; 2 *Iredell's L. R.* 361 ; *Cook* v. *Halsted*, 12 *John.* 188 ; *Noble* v. *Smith*, 2 *id.* 52.)

II. The acts required to constitute a delivery, necessarily depend upon the nature of the thing to be given. Where that is not conveniently susceptible of manual tradition, the delivery

of *a means to obtain possession*, which, *in fact*, or by the agen
cy of a suit at law or in equity, can be made effectual, will suf-
fice. This admits ponderous or bulky articles to be given, by
delivering the key of a trunk or warehouse containing them.
(2 *Ves. sen.* 443.) Also, the giving of a bond debt due donor,
by delivering the bond, or any other debt due him, by deliver-
ing the instrument by which it is secured. (10 *John.* 293 ;
*Bligh's N. R.* 542 ; 1 *P. Wms.* 414 ; *Prec. in Chy.* 269, 300 ;
2 *Atk.* 214.)

III. The courts have never departed from these rules ; nor is
there any fluctuation of decision in point of principle. (*Brad-
ley* v. *Hunt,* 5 *Gill & John.* 54 ; *Grover* v. *Grover,* 24 *Pick.*
265 ; *Snelgrove* v. *Bailey,* 3 *Atk.* 214 ; *Miller* v. *Miller,* 3 *P.
Wms.* 356.)

IV. The *donatio causa mortis*, is not an exception to the rule
requiring delivery. It only differs from other gifts in these par-
ticulars, 1st, a condition that donor may revoke, if he recover,
will be *implied ;* and 2dly, a man may thus (and in no other
way) grant directly to his wife. (9 *London Law Mag.* 334.)
This form of gift makes an important figure in the civil law, by
reason of the solemnities prescribed, in order to guard against
fraud. (*Inst. lib.* 2, *tit.* 7, §§ 1, 2.) But in the common law it
serves merely to describe one of the conditions upon which a
gift may be made revocable. (*Nicholas* v. *Adams,* 2 *Whart.
Pa. R.* 22 ; *S. C. below,* 1 *Miles' Pa. R.* 108, 113 ; *McDow-
ell* v. *Murdock,* 1 *N. & McCord,* 239, *per Nott, J.*)

V. The donor's own unsealed promissory note to the donee,
can not be made the instrument of an effectual gift. A gift is
a transfer executed, whereby the title in property is vested in
the transferee. A promissory note, even when founded on a
consideration, is merely a contract to pay, and vests a title only
in *the promise.* But if there be no consideration, the promise
itself is void. (*Tate* v. *Hilbert,* 2 *Ves. jr.* 112 ; *Holliday* v. *At-
kins,* 5 *B. & Cress.* 501 ; *Pennington* v. *Gittings,* 2 *Gill &
John.* 217 ; *Fink* v. *Cox,* 18 *John.* 148 ; 7 *id.* 28 ; *Parish* v.
*Stone,* 14 *Pick.* 199 ; *Raymond* v. *Silleck,* 10 *Conn. R.* 485 ;
*Copp* v. *Sawyer,* 6 *N. Hamp. R.* 386 ; *Holly* v. *Adams,* 16

*Ver. R.* 206.) The anticipated *death* is merely an *event* marking the *time* of payment. Not being a benefit to the promiser or a harm to the promisee, it can not form the consideration required to uphold a parol promise. (1 *Com. Dig. p.* 24, *Action of Asst. B.* 1.) The donor's order upon his own agent to pay, can not work a transfer of the title to the money. (*Tate* v. *Hilbert,* 2 *Ves. jr.* 112; *Vide Att'y Gen'ls remarks,* 122; *Lawson* v. *Lawson,* 1 *P. Wms.* 441; *see comments on in* 2 *Ves. jr.* 120, 121; 1 *Bligh. N. R.* 523.)

VI. The paper produced at the trial, assuming it to be genuine, was a bill of exchange. But, having been given without consideration, the testator was not liable to an action upon it as *drawer* on its dishonor by the drawees. He was not bound by any implied warranty. (*Chit. on Bills,* (8*th Am. ed.*) 182, *n. q ; id.* 183, *n.* 1; *Bunbury* v. *Lissett,* 2 *Strange,* 1211; *White* v. *Ledwick,* 4 *Doug.* 247; *Grant* v. *Da Costa,* 3 *M. & Sel.* 351; *Cram* v. *Hendricks,* 7 *Wend.* 569; 7 *Pet.* 103; *Rapelye* v. *Anderson,* 4 *Hill,* 472; 21 *Wend.* 286.)

VII. The letter and draft together form an executory gift to take effect upon the death of the testator, and not previously. Such executory gift is a legacy. As such it might be admitted to probate wherever special forms of execution are not required. In this state it is void, because not subscribed and attested as a last will and testament according to the statute. (*Lovelass on Wills,* 317; *Ward* v. *Turner,* 2 *Ves. sen.* 440; *Hester* v. *Young,* 2 *Kelly's Geo. R.* 32; *Pitts* v. *Mangum,* 2 *Bailey's So. Ca. Law R.* 588; *Grattan* v. *Appleton,* 3 *Story's Rep.* 763; 1 *Paige,* 372; 4 *Wend.* 368; *Smith* v. *Downey,* 3 *Iredell's Eq. R.* 279; *U. S. Dig. vol.* 3, *p.* 679, *Wills* 8, *a, by Curtis; Anderson* v. *Thompson,* 11 *Leigh,* 459; 2 *Ves. jr.* 231, 235; 26 *Wend.* 325; *Put. Sup. to U. S. Dig. vol.* 2, *p.* 953, *Wills* 3; 2 *Coll.* 367; 11 *Metc.* 162.)

VIII. This case illustrates in a very striking manner the dangerous character of the *donatio mortis causa,* as recognized by the common law. Its sphere of action should not be extended. (4 *Bro. C. C.* 293; 2 *Swanst.* 104; 1 *Iredell's No. Ca. Eq. R.*

Harris v. Clark.

132; 10 *Conn. R.* 485; 5 *Gill & John.* 59; 1 *Bligh's N. R.*
533; 1 *Miles' R.* 107; *Byles on Bills of Ex.* 100; 2 *Kent,*
443; *Sims* v. *Walker,* 8 *Humph.* 508.)

In reply to the argument on the other side, upon the ef-
fect of the draft as an assignment of so much of the funds in
the hands of the drawees, Mr. O'Conor proceeded to say in
substance—"Delivery to the donee of such an instrument as
will enable him, by force of the instrument itself, to reduce
the fund into possession, will suffice," is the plaintiff's doctrine.
This might safely be conceded. It might even be conceded,
that a delivery out of the donor's control of an instrument with-
out which *he* could not recover the fund from his debtor or agent,
would also suffice. Neither of these effects was produced by de-
livering the draft in question. An outstanding unaccepted draft
upon a debtor or agent, affords him no defense against a suit
for the fund. Neither is it pretended that the holder can main-
tain an action at law against him.

The plaintiff is driven, as a last resort, to assume the position
that this draft might operate as an equitable assignment, *pro
tanto,* of Smith's funds in the hands of his partners.

A draft is not an assignment *per se ;* but only a mandate.
It has no direct operation on the fund itself. As a mere draft,
equity cannot give it any other effect than the law gives it.
Consequently, in order to convert it into an assignment, some
special ground of equity must be shown by extrinsic circum-
stances. This can not be done in the present case. If the draft
had been given for a valuable consideration, so that to counter-
mand it would violate conscience and constitute a fraud, there
would be some plausibility in seeking aid from chancery; but
that court does not enforce specific performance of inchoate
*gifts.* (*Story's Eq. Jur.* §§ 706 *a,* 787, 793 *a,* 987, 1040 *c,* 433,
973.) The notion that a draft may operate as an equitable as-
signment of the fund, has never been advanced, except in cases
where the draft was issued for a valuable consideration.

Independently of the want of consideration, there is another
conclusive answer. A draft or order issued by the owner of a
particular fund directing the holder thereof to pay the *whole* of

it to a third person, may under certain circumstances operate as an equitable assignment. But the draft in question is neither upon any particular fund, nor for the whole of such fund. If the drawees of such a draft were liable to account in equity to the holder, any creditor might harass his debtor with a multitude of chancery suits. That they are not so liable, is conclusively established by high authority. (5 *Wheat.* 277, 286; 5 *Pet.* 580.)

All that has been said about *"appointment,"* serves merely to obscure the discussion. It is an inappropriate term borrowed for no beneficial end from a branch of jurisprudence altogether foreign to the present question. A term invented by conveyancers to describe the peculiar *modus operandi* whereby the beneficiary of an express trust exercises his power of disposition over the trust fund, is very much out of place when applied to the act of a party drawing upon his common law agent for part of his own legal estate. Misnomers may prolong an argument; but in a learned court they can scarcely perplex it, and certainly will not be permitted to alter the nature of things.

RUGGLES, J. The plaintiff's claim is founded on a bill or draft in these words:

" Messrs R. Clark & Co.

Please to pay Nancy Harris or order, thirty thousand dollars, and place the same to my account.

New-York, 9th July, 1844.          SIDNEY SMITH.

(Endorsed.)   Pay to the order of Levi Harris.

NANCY HARRIS."

This draft was made at New-York, during Sidney Smith's last illness, and was intended to take effect only in case of his death before he should be able to reach the residence of his sister, Mrs. Harris, in Chenango county. It was not intended nor can it be supported as a gift *inter vivos;* and the question is, whether it is valid as a *donatio mortis causa* to entitle her to recover the money mentioned in it against the representatives of the drawer.

If the draft had been accepted by Clark & Co. the drawees,

before or after the death of Sidney Smith the drawer, it would have operated from the time of Smith's death, as an assignment to Mrs. Harris, of so much money in the hands of Clark & Co. and it would have afforded to the plaintiff a remedy against that firm. In that case, it would have been like a gift of a promissory note, or other chose in action against a third person ; and the delivery of possession would have been sufficient to make the gift valid, because, although there was no actual delivery of the money ; there was a delivery of the means of obtaining the money. Thus far the law seems to be settled and understood by both parties. The cases cited at the bar, and the able and learned opinion given in the supreme court, leave no doubt on this point.

But the defendant insists that the draft, unaccepted, did not operate as an appropriation or transfer of a title to or lien upon the money in the hands of Clark & Co. the drawers ; that it afforded to the plaintiff no remedy legal or equitable against them ; that it amounted only to a promise by Smith the drawer to pay in case Clark & Co. should fail to do so ; that the gift was therefore inperfect and invalid because it was a gift of a promise to pay only, without consideration and without delivery of the thing given. If this was the effect of the draft, the case stands on the same footing, as if the donor had made and delivered to Mrs. Harris his promissory note, as a voluntary gift, in expectation of death ; and if such a gift is valid, the plaintiff is entitled to recover in the present case, otherwise not. This question was presented to the supreme court, in the case of *Wright* v. *Wright*, (1 *Cowen*, 598.) The plaintiff in that case, brought his action on such a note against the executors of the donor, and had a verdict, the defendants being unable to prove the facts on the trial. Soon after the trial, the defendants discovered evidence of the fact that the note was a gift by the testator during his last illness ; applied to the circuit judge for a stay of proceedings, in order to move for a new trial, which the circuit judge refused ; the defendants appealed from the decision, and the case came before the court on a special motion. The court, in the reported opinion, said it was clearly inferable

from the facts presented in the affidavits, that the note was a *donatio causa mortis,* and in that respect was distinguished from the case of *Fink* v. *Cox,* (18 *John.* 145,) cited by the defendants' counsel. They denied the motion on that ground. From the manner in which that case came before the court, it is fairly to be presumed, that the point on which the case turned was not argued by the counsel with any careful preparation, or examined by the court with the same deliberation as if the question had been presented on a bill of exceptions, or a case made. The granting of new trials on newly discovered evidence, rests in some degree in the discretion of the court. The circuit judge appears to have denied the order for a stay of proceedings, on the ground that the defence was of a nature not to be favored, and although the court put their decision on the ground that the note was valid, they may have adopted that conclusion with less caution than if the defence had been of a different character.

Independent of authority, my own judgment would have led me to the conclusion which the supreme court in that case adopted. In natural justice, I see no reason why he who freely and deliberately makes his note or bond to another for the payment of a sum of money, by way of voluntary gift, should not be compelled to perform his engagement. For, although the giver in such case receives nothing in return, for what he agrees to give, the breach of his promise may by creating unfounded expectations cause an injury to the donee, which never would have happened if the promise had not been made. But upon a careful examination of the previous and subsequent cases, I am satisfied that a voluntary promissory note without consideration is not, as the law now stands, the subject of a valid gift by the maker, either as a present donation or as a gift to take effect at the death of the donor.

*Pearson* v. *Pearson,* (7 *John.* 26,) was an action of assumpsit on a promissory note; and the court said that the validity of the note could not be supported on the ground taken at the trial, of its being a gift; for a gift is not consummate and perfect until a delivery of the thing promised, and until then, the party

Harris *v.* Clark.

may revoke his promise. A promise to pay money as a gift, is no more a ground of action, than a promise to deliver a chattel as a gift. It is the delivery which makes the gift valid. In *Fink* v. *Cox*, (18 *John.* 145,) a father gave a note to his son for $1000, payable in sixty days. It was a gift founded on the consideration of natural love and affection only. After the father's death, the son brought his action against his father's executors. It was held that although such a consideration is sufficient in a deed, against all persons except creditors and *bona fide* purchasers, it was not so in a personal action on an executory contract, and the plaintiff on that ground failed. This was regarded as an intended gift *inter vivos.* The same point was decided in *Holliday* v. *Atkinson*, (5 *Barn. & Cress.* 501.)

Gifts, however, are valid without consideration or actual value paid in return. But there must be delivery of possession. The contract must have been executed. The thing given must be put into the hands of the donee or placed within his power by delivery of the means of obtaining it. The gift of the maker's own note is the delivery of a promise only, and not of the thing promised, and the gift therefore fails. Without delivery, the transaction is not valid as an executed gift; and without consideration it is not valid as a contract to be executed. The decision in *Wright* v. *Wright* was founded on a supposed distinction in this respect, between a gift *inter vivos* and a *donatio mortis causa.* But there appears to be no such distinction. A delivery of possession is indispensable in either case. In *Noble* v. *Smith*, (2 *John.* 56,) Kent, C. J. declares that delivery in both kinds of gift is equally requisite on grounds of public policy and convenience, and to prevent mistake and imposition. Abbott, C. J. in *Holliday* v. *Atkinson*, which was the case of a gift of the maker's own note, says that a promissory note is not good as a *donatio mortis causa.* In *McDowell* v. *Murdock*, (1 *Nott & McCord*, 239,) Mr. Justice Nott declared that after examining all the cases brought to the view of the court, he had not been able to discover any foundation for the distinction made between a *donatio causa mortis* and any other parol gift in respect to the necessity of actual delivery. In

New Hampshire, Vermont, Massachusetts and Connecticut, it has been expressly decided that a gift by the maker of his own promissory note, can not be sustained as a *donatio causa mortis*, (*Copp* v. *Sawyer*, 6 *New Hamp. Rep.* 386; *Holley* v. *Adams*, 16 *Verm. Rep.* 206; *Parish* v. *Stone*, 14 *Pick.* 198; *Raymond* v. *Sellick*, 10 *Conn. Rep.* 485.) And in *Craig* v. *Craig*, (3 *Barb. Ch. Rep.* 116,) published since the argument of the present case, the late Chancellor Walworth concurs in overruling the case of *Wright* v. *Wright*. So far, therefore, as this point may affect the question in controversy in this case, it must be regarded as settled against the decision in *Wright* v. *Wright*, and that the gift of the draft in question must fail, if it is to be enforced only as an executory contract against the representatives of the donor.

A *donatio mortis causa* takes effect from the time the gift is made, but it is revocable during the life of the donor. If not revoked during his life, the title of the donee becomes absolute at his death; and by relation from the time of the delivery. (1 *Williams on Executors*, 552.) There was no revocation of the gift in controversy by the donor, and it became absolute at his death, if there was a sufficient delivery of the thing given during his life; and this depends on the question whether the draft without acceptance gave to Mrs. Harris a remedy *against Clark & Co.* either in law or equity to recover the money. In other words, did the draft operate as an assignment or appointment to her of so much money in the hands of Clark & Co., or create a lien upon it to be enforced against them? If so, the delivery was sufficient, because the instrument delivered was the means by which the money could be obtained from a third person. It is on this reason that the gift of a bond or other evidence of debt due from a third person, is valid. (*Snellgrove* v. *Bailey*, 3 *Atk.* 214; *Coutant* v. *Schuyler*, 1 *Paige*, 316; *Wells* v. *Tucker*, 3 *Binn.* 366; *Gardner* v. *Parker*, 3 *Mad.* 102.)

The draft in question is not a check on a bank or on a banker, but an inland bill of exchange. One of the characteristics which distinguish a check from a bill of exchange is that a check

is always drawn on a bank or banker.    (*In the matter of Brown*, 2 *Story's Rep.* 502.)   R. Clark & Co. were the late partners of Sidney Smith, but they do not appear to have been bankers. The instrument in question has the form and requisites of an inland bill of exchange.    It is payable absolutely and at all events, and not out of a particular fund, to the order of Mrs. Harris, and is indorsed by her.    It is not necessary for the purpose of giving it the character of a bill of exchange that a time should be specified for the payment of the money.    Bills of exchange, foreign or inland, may be drawn payable on demand; and a bill in which the time of payment is not expressly specified is, by implication of law, payable on demand.    (*Story on Bills*, § 50.)   It is clearly settled that no action at law will lie in favor of the holder of a bill of exchange against the drawee unless he accepts the bill.    (2 *Story's Eq. Juris.* 1043.)   The research of the counsel for the plaintiff has not enabled me to find a case where it has been held that upon a negotiable bill of exchange the drawee has been made liable in equity to the holder of the bill without his acceptance or assent.    Such an instrument gives to the holder no lien upon the funds in the hands of the drawee.    It is said by Mr. Chitty in the first page of his treatise on bills, that a bill of exchange operates as an assignment to the holder of the debt due from the drawee; and the same observation is to be found in several adjudged cases. But the true doctrine will be found stated in *Mandeville* v. *Welch*, (5 *Wheat.* 286.)   In delivering the opinion of the supreme court of the United States, Mr. Justice Story, in that case, observed, that it had been said "that a bill of exchange is in theory an assignment to the payee of a debt due from the drawee to the drawer.    This is undoubtedly true *when the bill has been accepted*, whether it be drawn on general funds, or a specific fund, and whether the bill be in its own nature negotiable or not; for in such case the acceptor, by his assent, binds and appropriates the funds for the use of the payee.    But where an order is drawn on a general, or on a particular fund for a part only, it does not amount to an assignment of that part, or give a

lien on the drawee unless he consent to an appropriation by an acceptance of the draft."

In *Tieman* v. *Jackson*, (5 *Peters*, 580,) an attempt was made to charge the drawee of a bill of exchange with the payment of its amount after it had been protested and dishonored. The circumstances were special. On the day of the date of the bill, the drawer assigned to the drawee for the payment of this bill and others the proceeds of a shipment of tobacco, then on its way, and consigned to the drawee, which the drawee afterwards received and converted into cash. But the drawee being a creditor of the drawer of the bill, had the property attached and sold, and instead of paying the bill applied the proceeds to his own use. It was held that the plaintiff was not entitled to recover. The bill was drawn by Fletcher upon Tieman in favor of Johnson, and the ground of the decision was that although Tieman was accountable to Fletcher for the proceeds of the cargo, Fletcher could not make him the debtor of Johnson, without his own consent. There was in that case, not only a bill of exchange, but an express assignment of the fund besides; and yet it was held that the action would not lie in favor of the assignee without a promise by the debtor to pay him instead of the original creditor. An attempt was made also in Luff against Pope, to recover against the drawee of a bill of exchange without acceptance, on the ground, substantially, that the instrument was not a bill of exchange, but intended as an order on a special fund; but the attempt failed. The instrument was in form a bill of exchange. And Mr. Justice Bronson in the opinion of the court says, " it would be enough to say that a written instrument which is perfectly plain and explicit on its face can not be changed into something else by any inquiry into extrinsic facts. It must speak for itself." He further said that the debt due from the drawee to the drawer of the bill was a chose in action which could not be transferred so as to give the assignee the right to sue in his own name, except in the form of an accepted bill of exchange.

These were *actions at law*; but it is said that a different rule prevails in equity, and we are referred to 2 *Story's Eq.* § 1044,

to show that the holder of a bill of exchange has an equitable lien on the funds in the hands of the drawee, which may be enforced against him without his acceptance or assent. This is undoubtedly true with respect to drafts on a special fund, which are not bills of exchange; and it will be found on a careful reading of the section referred to, and of the cases quoted in the notes, that the commentator is speaking of orders to pay over particular debts, and drafts on particular funds, and not of bills of exchange proper. The cases cited on the argument are of the same description excepting a few mere dicta. In *Peyton* v. *Hallet*, (1 *Caines*, 363,) the point arose on an order by the plaintiff to pay *White* a witness a certain sum out of the money to be recovered in that suit. *Cutts* v. *Perkins*, (12 *Mass.* 206,) was the case of a draft made by Abbott, the owner and master of a ship, payable out of certain freight and primage due him from the defendant. The draft *was accepted and paid* by the defendant. Afterwards the administrator of the drawer brought an action for the freight. The draft was held to be an assignment of Abbott's claim for the freight. *Row* v. *Dawson*, (1 *Ves. sen.* 331,) was the case of a draft made by *Gibson*, for certain sums payable out of certain moneys due him from the exchequer. In *Yeates* v. *Groves*, (1 *Ves. jun.* 281,) the first observation of the lord chancellor in giving his opinion is, " the order was not a bill of exchange being payable out of a particular fund." *Lett* v. *Morris*, (4 *Simons*, 607,) was the case of a draft payable out of moneys due on a building contract. In *Weston* v. *Barker*, (12 *John.* 276,) there was an assignment of certain policies of insurance in trust to hold the balance of money payable thereon, subject to the order of the assignor. The trust was accepted in writing, and the assignor ordered the trustee to account for the balance to the plaintiff. It was not the case of a bill of exchange. *Clark* v. *Adain*, cited in 4 *D. & E.* 343, was the draft by an officer on the agent of his regiment payable out of the first money which should become due to him for arrears.

These cases establish the rule that a draft payable out of a particular fund operates as an assignment *pro tanto* to the drawee; that an accepted bill of exchange operates in the same

way ; 'but none of them go to the extent of giving that effect to a bill not accepted. The only case I have been able to find, favoring a different doctrine, is that of *Corser* v. *Craig*, (1 *Wash. C. C. Rep.* 424,) concerning which it is only necessary to say, that so far as it might affect the question now in hand, it is overruled by the case of *Mandeville* v. *Welch*, heretofore referred to ; and the principle appears to be firmly established that a bill of exchange does not of itself give to the holder either at law or in equity a lien upon the funds of the creditor in the hands of the debtor, until after acceptance by the latter. A different rule would be inconvenient and dangerous, because it would enable the creditor by drawing bills, to entangle his debtor in litigation with a stranger, (and not only with one, but with any number of strangers,) in regard to the accounts and transactions between him and his creditor.

The authority on which the plaintiff's counsel mainly relied, upon the argument, was the case of *Lawson* v. *Lawson*, (1 *P. Wms.* 441.) In that case the testator on his death bed drew a bill upon his goldsmith to pay £1000 to his wife, and declared in a note in his own hand-writing on the bill that the money was to buy her mourning and to maintain her until her jointure should become due. (*See* 2 *Ves. jr.* 120.) The master of the rolls held the gift valid as a *donatio causa mortis*, and 'to operate as an appointment ; and he further said that being for mourning, it might operate like a direction given for his funeral, which ought to be observed, although not in his will. Lord Loughborough afterwards, in *Tate* v. *Hilbert*, (2 *Ves. jr.* 121,) says that the decision in *Lawson* v. *Lawson* was right, but that the report in P. Williams is inaccurate, and does not show the *ratio decidendi ;* and that " taking the whole will together, it is an *appointment* of the money in the banker's hands to the extent of £1000 for the particular purpose expressed in a written appointment, which is a purpose that necessarily supposes death. Therefore that case is perfectly well decided." The obscurity in regard to the true reason of the decision, is not perhaps entirely removed by the observations of Lord Loughborough. If by the word appointment is meant a direction

which the executors were to carry into effect, then the paper was testamentary. But the master of the rolls could not have regarded it in that light, for he did not require the paper to be proved in the ecclesiastical court. In this state it would be a palpable violation of the statute concerning wills, to hold the gift valid on the ground of its being testamentary in its nature. But if an "appointment" meant an appropriation of the money to a specific purpose for the benefit of the wife, then it was in effect an assignment or transfer to her for that purpose, and that is the sense in which I understand the word to have been used. It was so understood by Chancellor Walworth in *Craig* v. *Craig*, (3 *Barb. Ch. Rep.* 118.) And yet Lord Loughborough, in *Tate* v. *Hilbert*, says, "But upon that decision (*Lawson* v. *Lawson*) I can not say that in all events drawing a cash note upon a banker is an appointment of the money in his hands."

The report of the case in *Peere Williams* is obscure in another respect. It does not show who was the plaintiff nor who were defendants. But it is to be gathered from Lord Loughborough's statement of the case, from the register's book, that the bill was filed by the executors against the wife and the banker. The object of the bill, therefore, must have been to restrain the banker from paying the money to the wife upon the draft. It was not therefore a bill by the wife to enforce the performance and completion of the gift, in which case the decision might well have been against the donee on the established principle that a court of equity will not lend its aid to give effect to an imperfect voluntary conveyance. But it was a suit for the purpose of stopping the payment by the banker of money in his hands which had been "appointed," appropriated or assigned to the wife, and which was about to pass into her hands without the aid of any legal proceeding. In such a case a court of equity might justly refuse to interfere either for the purpose of restraining or of enforcing the completion of an imperfectly executed gift.

But assuming that the judgment in *Lawson* v. *Lawson* was founded on the principle that the draft in that case operated as an immediate assignment of so much of the testator's

funds in the hands of his banker, and as a delivery of the money, the decision does not support the plaintiff's claim which, on the evidence in the case, appears to be founded on an unaccepted bill of exchange, and not on a check on a banker, as in the case last cited. The former instrument is clearly not an assignment of the fund in the hands of the drawee so as to create a lien upon it in favor of the holder; while a check on a bank is said in many cases to operate as a transfer from the time of its presentment or notice to the bank. There are plausible, if not solid, reasons for this distinction, arising out of the course of business and the mutual understanding between banks and their customers. The customer deposits his money in a bank for safe keeping, with the understanding that he may draw by checks in such sums, and at such times, as may suit his convenience. The bank or banker receives it on that condition, and undertakes to keep the amount and pay the money accordingly. Checks are used and treated as cash, and by the course of business they are paid by the bank or banker on whom they are drawn, with the same punctuality and certainty as if the deposits were specifically the money of the customers. Checks are therefore practically equivalent to a transfer of so much of the fund deposited.

Bills of exchange on persons of other occupations are not always paid or expected to be paid with the same precision or punctuality. There may be more uncertainty with respect to the amount of funds in the hands of the drawee: the funds may not be in cash or convertible immediately into cash. Bills are usually drawn at longer time, and are frequently taken more on the general credit of the drawer, and with less certainty of acceptance and payment by the drawee, than checks on a bank or banker, where the credit is founded on actual cash in deposit. There is moreover no such obligation, on the part of debtors in general, as in the case of banks and bankers, to pay their debts in parcels, and in such sums, and at such times upon such drafts as may suit the convenience of their creditors.

But whether a bank check operates in favor of the holder as an assignment of the fund, so as to give him a remedy against

Harris *v.* Clark.

the drawee, who refuses to accept or pay, is perhaps yet unsettled; (*See* 2 *Story's R.* 516, *In the matter of Brown a bankrupt; Dykers* v. *The Leather Manuf. Bank,* 11 *Paige,* 617;) and it is not necessary to determine it with a view to the case under consideration. We have already seen that the plaintiff has no remedy, legal or equitable, upon his bill of exchange against the drawer: and that as against the representatives of the drawer it is without consideration.

Assuming, as we must in this case, that the draft is genuine, there is no doubt of the intention of Mr. Smith to give the money in question to his sister—and I come to a conclusion against her right with reluctance—a reluctance qualified, however, by the belief that the clear policy of the law is against the encouragement of gifts of this nature. They are essentially testamentary; they are to take effect only in case of the testator's death, and they are revocable during his life. The same considerations of prudence and caution which induced the legislature to require wills of personal estate to be executed, published and attested with great formality, would seem to forbid these informal dispositions of property in expectation of death. The temptation to fraud and imposition in regard to these gifts is as powerful and as dangerous as in the case of wills, and yet has been left unchecked and unregulated by statute: and they ought not to be tolerated by the courts, unless they are attended by all the requisites which the common law prescribes to give them validity.

JEWETT, C. J., GARDINER and HOYT, Js., concurred.

CADY, SHANKLAND and STRONG, Js., were for reversal.

Judgment affirmed.