In the Matter of the Estate of JAMES CARDWELL, Deceased.

Surrogate's Court, New York County, August 13, 1943.

*Joseph A. Cox* for James F. Egan, Public Administrator of New York County, petitioner.

*Joseph H. Wackerman* and *Murty J. O'Connor* for Robert Cardwell, respondent.

DELEHANTY, S.   In this discovery proceeding the subject matter is a savings bank book and the money evidenced thereby. In support of the burden placed on the respondent — a nephew of deceased — to establish a pleaded gift *causa mortis* the

respondent called the superintendent of the building in which deceased was employed as a fireman. The superintendent testified that on the day when deceased went to the hospital, March 9, 1943, he gave to the superintendent an envelope in which deceased's bank book — the one in controversy — was placed at the deceased's direction and on which was written deceased's own name. The testimony is that the envelope was sealed by deceased or at his wish and that he handed it to the superintendent with the statement: " If anything happens to me I want Bob to have this ". " Bob " is.the respondent. The wife of the superintendent was called and she testified to the same general circumstances. She quoted deceased as saying: " In case I don't come back give this to Bob. I want him to have this ". The superintendent testified that he showed the envelope to the respondent while deceased still lived but put it back in the desk where he had kept it and gave it to the respondent only after deceased was dead. The question presented by a motion to dismiss the claim of gift and to adjudge the bank book and the account evidenced thereby the property of the estate of deceased is whether or not the testimony just summarized suffices to establish a gift *causa mortis.*

Under the controlling authority of *Vincent* v. *Rix* (248 N. Y. 76) the court holds that as a matter of law it does not. An effort is made by respondent to distinguish that case on the ground that in the cited case the gift was one *inter vivos.* Some authorities are urged upon the court by the respondent in support of his contention that in the rules of law respecting delivery a distinction exists between a gift *causa mortis* and a gift *inter vivos.* These authorities are in some aspects distinguishable but in any case they cannot be followed by this court since controlling authority is to the effect that there is no validity in the attempted distinction.

In a case which arose nearly one hundred years ago (*Harris* v. *Clark*, 3 N. Y. 93) the question had to do with the validity as a gift *causa mortis* of a draft drawn by the deceased during his last illness and mailed by him to his sister as a means for putting her in possession when he died of the fund represented by the draft unless beforehand he changed his will in her favor. He died without making the change. The opinion of the court on the point here important says (page 113) : " Without delivery, the transaction is not valid as an executed gift; and without consideration it is not valid as a contract to be executed. The decision in *Wright* v. *Wright* was founded on a supposed distinction in this respect, between a gift *inter vivos* and a *donatio mortis*

*causa.* But there appears to be no such distinction. A delivery of possession is indispensable in either case. In *Noble* v. *Smith,* (2 Johns. 56) KENT, C. J. declares that delivery in both kinds of gift is equally requisite on grounds of public policy and convenience, and to prevent mistake and imposition.''

The case of *Noble* v. *Smith,* cited in this quoted excerpt, was approved in *Matter of Van Alstyne* (207 N. Y. 298, at 308). That case makes it clear that even prior to *Vincent* v. *Rix* (248 N. Y. 76, *supra*), the requirements of delivery in the case of a gift *causa mortis* or a gift *inter vivos* were absolute.

In *Harris* v. *Clark* (3 N. Y. 93, *supra*), the court as its final word made a comment on gifts *causa mortis* which states a view respecting such gifts which has been repeated often in the cited cases and which is evidenced in our statute law by the restrictions on oral wills found in section 16 of Decedent Estate Law. The court in *Harris* v. *Clark* said (page 121) : `` * * * the clear policy of the law is against the encouragement of gifts of this nature. They are essentially testamentary; they are to take effect only in case of the testator's death, and they are revocable during his life. The same considerations of prudence and caution which induced the legislature to require wills of personal estate, to be executed, published, and attested with great formality, would seem to forbid these informal depositions of property in expectation of death. The temptation to fraud and imposition in regard to these gifts is as powerful and as dangerous as in the case of wills, and yet has been left unchecked and unregulated by statute; and they ought not to be tolerated by the courts, unless they are attended by all the requisites which the common law prescribes to give them validity.'' This view is echoed in *Matter of Van Alstyne* (207 N. Y. 298, *supra*), where it is said (page 308) : `` Because many gifts are sought to be shown by oral evidence after the donor's death, it is necessary for the public good to require clear and satisfactory evidence of the fact to prevent fraud and perjury. There must be a delivery which results in a present change of dominion and ownership. Intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given.''

It is clear that the statutory restrictions on the making of oral wills would be completely emasculated if the requirements for delivery to the donee in the case of gift *causa mortis* were not enforced. Our statute has limited the privilege of oral will-making to soldiers and sailors in actual military or naval service or to a mariner at sea. Even in the cases of these persons there

are statutory limitations which would make their privileges, in a practical sense, less valuable than those of ordinary civilians if the theory of the respondent respecting gifts *causa mortis* were to prevail.

On this record there can be no doubt that the superintendent of the building was the agent of the deceased. His authority was terminated at once upon the death of his principal. He had no power thereafter to make any disposition of the property of deceased even though the purported grant of authority was an authority to act after death. The fact is that the plan of deceased was impossible of execution. That is a result of the operation of fixed legal principles which are of grave public importance and which must be enforced. The ruling that delivery *to the donee* is just as essential in the case of a gift *causa mortis* as in the case of a gift *inter vivos* has consistently been made by this branch of the court. It is the law declared also in the co-ordinate branch of the court in *Matter of Zweig* (176 Misc. 770) where that branch was considering a gift *causa mortis* and held that it failed by reason of the rules of law stated in *Vincent* v. *Rix* (248 N. Y. 76, *supra*).

On the authorities cited, the motion of the administrator of deceased is granted, the claim of gift is dismissed and the bank book and the money represented thereby are adjudged to be assets of estate of deceased. Submit, on notice, decree accordingly.