KENISTONS, AP'TS, *v.* SCEVA, ADM'R, AP'EE.

To constitute a valid gift *causa mortis,* three attributes must exist : 1. The gift must be made in contemplation of the donor's death. 2. It must be subject to the condition that it shall take effect only upon the donor's death by his then existing illness. 3. There must be a delivery of the subject of the donation.

No particular form of words is necessary to give effect to the transaction, if the evidence of that which was said and done establishes the requisitions for its validity.

Money and a negotiable promissory note may be the subjects of a gift *causa mortis.*

The statute requires that the *delivery* of the gift shall be proved by two indifferent witnesses ; but the proof of the other attributes of the gift is not defined nor limited by the statute.

The admission of the intestate that he had delivered the property, is competent evidence upon the question of its delivery.

A valid *donatio causa mortis* may be created by deed.

And it would seem a deed may in some cases be a proper and sufficient substitute for manual delivery.

This is an appeal, by John W. Keniston and James L. Keniston against Henry Sceva, administrator of the estate of Enoch F. Sceva, appellee, from the decision of the judge of probate for Merrimack county, denying the prayer of the appellants' petition of June 25, 1872, that certain gifts, which it was alleged had been made by the appellee's intestate, one Enoch F. Sceva, to said appellants, in expectation of death, might be established by the decree of said judge of probate. Said intestate, on April 24, 1872, at Andover, in said county of Merrimack, while sick of the disease of which he died on May 28, 1872, and in expectation of death, executed, in the presence of the witnesses whose names are affixed thereto, a paper of which the following is an exact copy:

"State of New Hampshire, Merrimack ss.     Andover, April 24, 1872. I, Enoch F. Sceva, of Andover aforesaid, in the county of Merrimack and state of New Hampshire, deposit the sum of $400, four hundred dollars in cash, also one promissory note as follows:

{ Five cent }     Andover, May 9, 1871.— $400.   For value received, I promise to pay Enoch F. Sceva, or order, { U. S. stamp. } four hundred dollars on demand, with interest.   GEORGE H. HALEY. To be disposed of as follows : 1st, to pay my funeral charges, and the balance to be divided equally between John W. Keniston and James L. Keniston, both of said Andover, state and county aforesaid.

Hereunto I set my hand

and seal in presence—          ENOCH F. SCEVA, [L. S.]

Witnesses, Jacob Rowe, Frank G. Hersey, Ellen J. Hersey."

On the same day, and before the execution of this paper, but as part of the same transaction, the intestate, in the presence of said three witnesses, and Jonathan Keniston, the father of the appellants, who was also present when said paper was executed, stated to them the same as appears in said paper, and showed them said cash and note. Said Enoch F. Sceva had real estate and other personal property, but died without any disposition of the same in writing, except as aforesaid. Said note was, at the time of the execution of said paper, endorsed by said Enoch F. Sceva to said John W. Keniston. The appellants offered to prove by the three witnesses to said paper, who were neighbors of said deceased, but not relatives or pecuniarily interested in the matter, and also by said Jonathan Keniston, facts tending to show that said deceased, after the execution of said paper and about the same time, counted said money, and delivered over to said John W. Keniston said cash and note, in pursuance of and for the purposes set forth in said paper. They also offered their own testimony as to all the facts in the case. They also offered to prove that said deceased, after he had executed said paper, admitted to several persons that he had made

the disposition of his property therein set forth, and had actually delivered the same to the appellants. They offered also to prove that they duly paid the funeral expenses of said deceased, according to the direction in said paper. To the competency of the testimony, if proved, and to the proof of the facts offered as aforesaid by the appellants, the appellee objected. The foregoing facts were agreed to for the purpose alone of settling the various questions of law arising in this case, reserving the right to try any question of fact deemed by either party material; and the questions thus raised were reserved.

*Shirley,* for the appellants.

I. The General Statutes (p. 358, sec. 17) provide that "no gift, in expectation of death, often called *donatio causa mortis,* shall be valid, unless the actual delivery of the property to the donee shall be proved by two other indifferent witnesses, upon petition of the donee to the judge of probate to establish such gift, filed within sixty days after the decease of the donor." These provisions are entirely new. See report of the commissioners (p. 456, sec. 17). The appellants, in due form, filed their petition in the probate court for this county, in conformity with this statute. Due notice was given to all. The appellee appeared in person, and by counsel, and a hearing was had. Mr. Hersey, one of the witnesses to said paper, testified fully, and was cross-examined minutely and at great length. His wife corroborated her husband. Thereupon the counsel for the appellee, without adducing any testimony, moved to dismiss the petition, on the ground that, if every other requisite of a gift *causa mortis* existed, the clause in said paper relating to the payment of the "funeral charges" of said Enoch F. Sceva rendered it invalid. After argument, the judge of probate granted the motion, and denied the prayer of the petitioners. From that decision the donees have appealed to this supreme court of probate.

The case raises several other questions, which counsel regard as important in the future conduct of this and other proceedings, besides the one directly raised before the judge of probate.

1. There is no foundation for the objection taken by the appellee's counsel. Such gifts were unknown to the ancient common law. The great landed aristocracy, who created so much of that law, resisted their introduction, as they did the tide of that whole body of innovations known as commercial law, because they "would not change the laws of England." Overpowered, such gifts were imported from the civil law, and engrafted bodily into the common law. The same narrow spirit which opposed their introduction, jealously sought to defeat the "admirable equity" of the civil law by construction. One after another these brutalities of construction have been swept away, until gifts *causa mortis* really stand as they stood at civil law.

The statute in question does not profess to make any change in the nature of such gifts. It is simply a "practice act" and a statute of limitations rolled together. Prior to this statute, such gifts were often

" established," upon proper proceedings therefor, by the decree of the court of equity. Since the statute, the only remedy would seem to be in the probate court. The act is, in substance, that such gifts, defined as heretofore, shall, upon proceedings instituted within a certain time, proved in a certain manner, and before a certain tribunal, be valid, but not otherwise. Some cases hold such gifts testamentary; others, the reverse. Such definitions remind us of the lengthy essays written to prove that a mortgagor is a tenant at will, and which end in the conclusion that he is not a tenant at will, and that the term mortgagor exactly expresses his real relation. Such gifts are *sui generis.* A will is to be tested by the laws in force at the decease of the testator; a gift *causa mortis,* by the laws at the time of delivery. The vital essentials of a gift *inter vivos* are, that there must be a delivery, a change of dominion, and the gift must be *absolute.* Such essentials of a gift *causa mortis,* where there is no deed, are, that there must be a delivery, and that the gift must be *conditional.*

Such gifts cannot legally exist, unless under at least the following conditions:

(1) The subject of the gift must be personal property. (2) It must be actually delivered to the donee or his trustee, " or [as Kent says] the documentary evidence of it." (3) It must be made by the donor when in expectation of death. (4) Perfect remission of that peril revokes the gift. (5) The death of the donee before the decease of the donor revokes it. (6) The donor may revoke it at any time. (7) The donee, or some one for him, must accept the gift.

The judge of probate in this case decided that, though the paper might be valid as a will or a deed of trust, the clause relating to " funeral charges " created a " condition or a trust," which rendered the whole invalid as a gift *causa mortis.* In other words, he decided that a gift, which could not legally exist unless conditional, could have no legal existence unless absolute—unconditional. Such a position has no warrant in legal principles, is repugnant to reason, has, so far as I am able to find, but a single *dictum* which tends to support it, and is in defiance of the unbroken current of authority since such gifts were known to the civil law.

The case of *Borneman* v. *Sidlinger* has been three times before the supreme court of Maine. The opinion of the court was twice delivered by WESTON, C. J.—see 15 Me. 431, and 18 Me. 226—and in the last instance by WHITMAN, C. J.—see 21 Me. 188. In this case the donor had sons and daughters, but the gift was to " Sally Sidlinger," " to be by her equally divided to the said deceased's daughters living, and the children of Mrs. Robinson, deceased." The court held that the gift was " good, although of a chose in action, accompanied by a mortgage as collateral security, and notwithstanding it was in trust for the benefit of others besides the donee."

In *Caldwell* v. *Renfrew,* 33 Vt. 213, the wife, in expectation of death, gave her husband certain notes held by her, upon " the condition" (as the case finds) that he should give the children of a former hus-

band and to her brother certain sums. BENNETT, J., speaking for the court, says,—"It cannot be doubted that she might make a *donatio causa mortis* to the persons named through the intervention of a trustee, nor can there be any doubt that her husband might be such trustee."

In *Hambroke* v. *Simmons*, 4 Russ. Ch. *25, before the Master of the Rolls, it appeared that "the defendant who claimed the gift stated that the testator had annexed to it 'the condition' that the mortgagor was not to be troubled during his life for the principal or interest, and that at the death of the donee the £600 was to go to her children." The case went to another tribunal, but the argument reported showed that able counsel were unable to find any authority tending to show that either trust or condition invalidated a gift *causa mortis*.

The principle involved was decided in *Blount* v. *Burrow & Waller* (by EYRE and ASHURST, Lord Commissioners), 4 Brown's Ch. Cases *73 ; and the precise question raised in this case was carefully considered by the learned barons of the court of exchequer, in *Hills* (adm'r of Mrs. Limner) v. *Hills* (decided May 26, 1841), 8 Mees. & Wels. 400. The head note is, "a gift may be good as a *donatio mortis causa*, although it is coupled with a trust that the donee shall provide the funeral of the donor." In this case, Mrs. Limner, the donor, when in her last sickness, sent for the landlady with whom she lodged, and said that "she felt much worse, and she wished her brother James (the defendant) to bury her ; that she wished him to have all she had, and he would bury her comfortably." There was evidence tending to show a delivery. The jury found the gift *causa mortis*. Upon the motion for a rule, Lord ABINGER, C. B., said,—"If, indeed, in law there could be no *donatio mortis causa* coupled with a condition, the defendant could not succeed ; but, upon the authorities, that appears not to be so ; property may be given by way of *donatio mortis causa*, although the gift be made for a special purpose and coupled with a trust" (p. 403).

PARKE, B. "The only question for us to determine is, whether what is otherwise a *donatio mortis causa*, as found by the jury, is less so because coupled with a condition that the donee shall pay the expenses of the funeral. * * It is not indeed properly a condition, because otherwise the property would not vest until performance of it, but a *trust* upon which the *donatio mortis causa* was made ; and the authority to which I have already referred, of *Blount* v. *Burrow*, goes the length of deciding that it is no objection to the gift that it is made for a special purpose. There, India bonds were given by the deceased to the party, subject to the condition of his carrying on a chancery suit, and the gift was nevertheless held to be a good *donatio mortis causa*. I cannot distinguish that case from the present" (p. 403).

ALDERSON, B. "I am of the same opinion. The case of *Blount* v. *Burrow* decides that a *donatio mortis causa* may be made for a particular purpose ; that the party may deliver the subject-matter of the gift so as to pass the property to the donee, in contemplation of death, although he is to use it for a particular purpose, or out of it to make a

particular payment, and to keep the residue for himself.   That case is entirely in point" (p. 403).

ROLFE, B. " I am of the same opinion."   " I can not see how the annexation of a trust to the gift can make any difference."

These authorities, and the reasoning on which they rest, would seem tolerably decisive.   It would be a strange state of the law, indeed, if A should say to B,—" There is $400 in cash : pay or give $50 of it to D, and you and C shall share the remainder equally,"—and B should accept it, and the law should invalidate the gift to B and C because of a gift or payment to D.   Here that is certain which can be and has been made so.   The books all agree that such a gift may be made to A for B, or for B and another, or others, to be divided between them in certain proportions.   Can the court draw a rational distinction between such cases, and a case where such a portion is to be divided among two persons named and another portion to be applied by the same hand for a specific purpose ?   Is there a legal distinction between persons and purposes in this respect ?

2.  The counsel for the appellee insinuated rather than urged before the judge of probate, that, if otherwise good, this gift was invalid because of the writing.   Every argument, drawn from reason, safety, certainty, and sound policy, tends in the opposite direction.   The civil law expressly provided that such gifts might be in writing.   The cases are quite numerous in England and America in which the whole or a part of the evidence thereof was in writing.   The view of the appellee is without the support of a single decided case.   It would seem to be equally well settled that such gifts can be made by deed,—by an instrument under seal.   The only point open to question would seem to be, whether or not, when such gifts are made by deed, the delivery of the deed does not dispense with or supersede " manual tradition."   In all other cases the delivery of the deed is, in law, a delivery of the thing.   In legal reason, there seems to be no distinction—and no necessity for a distinction in this respect—between this and any other deed.   Nor does the statute help the matter.   "Actual delivery " was as much a test before that statute as under it.

*Meach* v. *Meach*, 24 Vt. 591, was a bill in equity to establish such a gift by deed.   The donor died June 23, 1847, and on May 13, 1847, when " desperately sick of consumption," he gave to his wife, by deed in common form, all his real estate, worth $10,000, and a deed of all his personal property, consisting of stock on said farm and choses in action.

REDFIELD, C. J., says,—" And upon principle there could be no objection to creating the gift by deed, without any formal manual tradition of the thing, which in many cases would be difficult, and in others like the present, consisting in part of a large herd of cows, altogether idle and absurd."   He then cites with approval Chancellor Kent's note to *Walter* v. *Hodge*, 2 Swanst. 106, that " it requires delivery of the property, or the documentary evidence of it."   The hard sense of these views is apparent.   But if his objection is sound, we fail to see how it

can avail the appellee.   If such a gift cannot be proved by evidence in writing or under seal, the case stands as if no such instrument exists, or had ever existed.   We offered to prove before the judge of probate, and did prove until stopped by him on motion of the counsel for the appellee, that the donor, before the writing was executed, verbally made the same gift to the donees, and delivered the cash and note, in pursuance of that gift, to one of the donees, for the purposes which were stated and appear in this case.   We make the same offer here.   The evidence cannot be excluded,—first, because it is in writing; and, secondly, because it is not in writing.

II. The counsel for the appellee, at the trial before the judge of probate, excepted to the testimony of Mr. and Mrs. Hersey, upon the ground that they were not "indifferent witnesses."   The same question is raised by this case.

1. There was no claim that they were disqualified by interest, marriage, or blood, but that, like jurymen, they must be without any bias,— in other words, if they had any feeling in favor of either the donees or the appellee, they must be excluded; and if one was biased one way and the other another, then no case was made.   With all due respect, it does seem to us that such a position assumes that the three learned jurists who created this section were fools, and that the court are but little wiser than the commissioners.   The use of this term may, as urged by counsel, be unusual, novel, or peculiar; but it is obvious that the statute only means, that they must have no pecuniary interest in the matter; that they are neither to gain nor lose by the event of the suit.   Whenever the loss or gain of the witness will be the same whatever the event of the suit, his interest is balanced, and he is said to be an "indifferent" witness.   To hold otherwise would be to hold that no gift *causa mortis* could be legally made, unless the donor in the pangs of death first summoned a panel of jurors, and then judicially exhausted the "challenge to favor," not only as regarded himself and the donees, but as to all future claimants.

III. Jonathan Keniston was present, and knew all about the gift, its delivery, and acceptance.   The only objection to his competency is, that he is not an "indifferent" witness, because he is the father of the donees.   There is no authority for such a position, and no reason.to support it.   The statute does not apply, for he has no interest in the matter.

IV. The admissions of the deceased, that he had made the disposition of his property as set forth and had actually delivered the same, were competent.

1. They were admissions against his interest.   If believed, they bind him and his privies.   We concede that the *dictum* of Judge DEWEY, in *Rockwood* v. *Wiggin*, 16 Gray 403, is precisely in point, and an adverse authority.   But nothing can be clearer than that the *dictum* is unsound in principle.   The unbroken practice in this state has been the other way.   *Marsh* v. *Fuller*, 18 N. H. 360; *Jones* v. *Brown*, 34 N. H. 440, 441, 442; *Reed* v. *Spaulding*, 42 N. H. 116, 118, 121; *Cutting* v. *Gil-*

*man,* 41 N. H. 148 ;—and see *Veal* v. *Veal* (before the Master of the Rolls), L. R., vol. 23, pp. 303, 304 ; *Bedell* v. *Carll,* 33 N. Y. 585 ; *Champney* v. *Blanchard,* 39 N. Y. 111, 112, 115 ; *Blount* v. *Burrow,* 4 Brown's Ch. Cases *73, *74 ; *Hills* v. *Hills,* 8 Mees. & Wels. 400 ;—and see *Snellgrove* v. *Baily,* 3 Atk. 214 ; *Hill* v. *Chapman,* 2 Brown's Ch. Cases 612, *613, *614. In connection with the other testimony offered, this evidence was clearly competent.

2. But we go further and say, that the gift and " actual delivery " and acceptance may all be proved by the admissions of the deceased. This clearly was so before the statute, and the statute does not in terms, or by reasonable implication, say that such admissions are incompetent. It does not provide that anything shall be done in the " actual presence " of two witnesses, or of any witness. The statute relating to wills is very different. See Gen. Stats. 357, sec. 6. The " actual delivery " must be such as the nature of the subject admits of. *Cutting* v. *Gilman, ante,* 152. That such gifts have not been " favored in law," we concede ; but since the statute, there is no reason why they should not be as much as deeds or wills.

V. The testimony of the appellants is competent. Prior to this statute (January 1, 1868), the donees have always been allowed in this state to testify ; and the only question can be, Has the law been changed in this respect ?

1. The proceeding is purely *in rem.* The notice is given by publication to all the world. The administrator is not necessarily a party to the proceeding. If he can exclude their testimony under sec. 16, Gen. Stats. 428, there is no good reason why any other claimant may not do so. The provisions last referred to were in substance in force for years prior to the statute in question, and there is no more reason why they should be held to govern this as an inferior statute, than that they should have changed the practice prior to those statutes.

2. The framers of sec. 17, Gen. Stats. 358, manifestly intended to make that an independent provision. They covered the whole ground, provided for all contingencies, and assumed by it to regulate the entire practice.

3. By necessary implication, it would seem too clear for argument, that, as to everything aside from the " actual delivery," they are competent witnesses. Aside from that there is no restriction in terms or otherwise.

4. The phrase " two other indifferent witnesses " can only mean, two other witnesses who are indifferent. The " actual delivery " of the gift, then, must be proved by " two indifferent witnesses " " other " than the appellants. In other words, although the appellants may testify, the judge of probate must be satisfied, by the testimony of at least " two other " competent witnesses besides the appellants, that the property was actually delivered. This is mere formal proof, which they must put before the court before they can proceed ; but after that the case is open for all competent testimony, whether that be of the appellants or other persons. The statute (1858) making all parties

witnesses, in effect prohibited them from being the formal attesting witnesses of wills and deeds, and other instruments required to be attested by subscribing witnesses.     Gen. Stats. 429, sec. 23.     But in practice, when such formal proof from other sources has been produced, the parties, if they choose, become witnesses for all purposes.     We are not aware that this has ever been deemed open to question.     It cannot be urged that the statute in relation to gifts *causa mortis* is more restrictive than the one last cited.     From its terms it seems to be more liberal.     The parties must put in the formal proof of delivery at first, but they are no more precluded, if that proof is attacked, from supporting it by their own testimony, than on any other point.     Any other construction would seem unreasonable, uncalled for, and in violation of the general policy of the law upon this and kindred subjects.

*Barnard,* for the appellee.

The appellants claim, upon the facts stated, that they are entitled to hold the note and money, on the ground that the same was a gift *causa mortis* by Enoch F. Sceva to them.

As early as the days of Justinian, these gifts were looked upon with jealousy on account of their abuses; and the unfavorable comments, so often made by the court during the whole line of adjudicated cases since, leave little doubt that the character of this kind of transfer of property has not improved.     From the nature of such gifts, and the circumstances under which they were made, it can hardly be questioned that, by the common law or the civil law from which they originated, they, like nuncupative wills, rested in parol.

By the prescribed manner of proof, unwritten evidence seems to have been alone contemplated by our statute, under which the appellants proceed;—see Gen. Stats., ch. 174, sec. 17.     No mention is made of writing in connection with the subject.

The elementary writers and the judgments of courts all concur in stating what facts and circumstances are required to constitute a valid gift *mortis causa*.     It must be made in apprehension of present peril of death, and to take effect only in the event of the donor's death by his existing disease, and only in case the donee survives him, and revocable at any time before his death by the mere volition of the donor. Redf. on Wills, Part II, 30, and authorities; *Tate* v. *Hilbert,* 2 Ves. Jun. 111; 1 Bouv. Dic. 490 ; 2 Kent Com. *444.

The actual delivery of the thing to the donee, and his keeping the possession thereof, coupled with the right of revocation at the pleasure of the donor, and to take effect only in case the giver dies, distinguishes this kind of gifts from gifts *inter vivos*.

The appellants received the note and money in controversy, coupled with a deed or testamentary document, which, if properly executed, it seems, might have been set up as a will.     Whatever was said and done on the day the property passed into the hands of the appellants was embodied in the written document; hence their offer of proof, as mentioned on the second page of the case, is inadmissible.

Their own testimony is incompetent, under the requirements of the statute, and the admissions of Sceva are none the less so, as they do not come to the statute requisites of proof of " actual delivery of the property to the donee."

The document, copied into the case and executed with great formality on the 24th of April, 1872, is therefore substantially the only evidence as to what Sceva did and intended to do with the property in controversy; and but little light can be obtained from the adjudicated cases, as no claim like this was ever reported, resting upon such a foundation. The witnesses to the paper referred to can only testify to its execution, not to the facts embraced in it.    In the light of this deed, for such it seems to be, did Sceva give the appellants this property on the condition that they survived him, and did he reserve the right to revoke the gift if he survived ?    The document in terms does neither.    If Sceva intended this, no writing was necessary; moreover, by the instrument itself he put the whole matter beyond his control.    It contains no clause or provision, express or implied, which would allow him to revoke it, and if he had recovered his health he could no more control the money or note than he could cancel a deed of real estate, unless the court hold it is a will, which perhaps he had in his mind to make, but which cannot be assumed in this proceeding.    But, still further applying the test that gifts *causa mortis* are void if the donee does not survive the donor, how would it have been in the case at bar if Sceva had survived the appellants ?    Would not their heirs have still claimed the property, upon performing the same conditions that the donees were to perform, and which it is claimed it was necessary to perform before they could perfect their title to the property ?    This construction of the written document, and the views suggested, if correct, are fatal to the claim of the appellants.

The construction of the writing is material, and colors the whole transaction, for the delivery to the appellants was a delivery under and for the purpose set out in the instrument; and it seems that he could not have meant any more than that this property should be kept by the appellants as depositors—" deposit " being the term used—until his decease, when he attempted to provide for its distribution, but failed, unless the document can be set up as a will, and therefore, like any imperfect execution of a man's intentions to dispose of his property, it comes to nothing, and the administrator is entitled to its control, and the appellants fail in their title.

*Shirley*, in reply.

The counsel urges in his brief, what he insinuated at the trial, that no gift *causa mortis* could be established, if the whole or any part of the evidence was in writing.    We have shown in our former brief, that, by the express provisions of the civil law, such gifts might be established by written evidence.    That such gifts might be established at common law, when the whole or any part of the evidence thereof was in writing,

is too clear for further argument or citation. The position of the counsel is, that our statute excludes written evidence of such gifts. This is a most indefensible proposition. The statute says nothing of the kind. The counsel asks the court to usurp the power of the legislature. There is nothing in the phraseology used to warrant such a construction. The decisions of our own court, cited by the commissioners in the margin, show clearly enough what they intended. They borrowed a term from the common law. It had there a definite signification. By a familiar rule, it was the same thing when transplanted bodily. At common law, such gifts were established by any competent evidence, written or unwritten. The same rule would still apply, unless the statute has clearly changed it. The statute does not assume to change the nature of such gifts. The changes are, (1) that the gift must be established in a probate court, instead of any court of common law or in equity; (2) that the petition must be filed with the judge of probate within *sixty* days after the decease of the donor; and (3) that a certain fact must be proved by " two other indifferent witnesses." The provision, that a certain court shall have jurisdiction; that proceedings must be instituted within a certain time; and that the testimony of more than one witness shall be required to establish a particular fact, can have no bearing upon the question. The statute does not require that the gift itself, or any of its legal requisites (aside from the delivery), shall be proved by two witnesses or any witness; they are left to be established by any evidence that was competent before the passage of the statute. The " actual delivery" itself was as much a requisite before the statute as since. The term must be construed to mean, such delivery as the subject of it from its nature was capable of. Any kind of " personal estate" may be the subject of such gifts. Horses, cattle, sheep, hogs, every kind of beast, fowl, or serpent in a menagerie, buildings upon the land of another, like the Crystal Palace itself, and a great variety of securities and trust interests, are the subjects of such gifts. Certain of such securities and interests can only pass, where a portion of the evidence is in writing. The Coliseum at Boston might have been the subject of such gift. Suppose its owner had given it to a person in California, what kind of an " actual delivery" could he have made? Clearly, only that of which its nature made it capable. It is quite clear that the testimony of living witnesses was competent to show when the donor died, and that he was sick at the time of this gift, and did what he did in expectation of death. These are independent facts. Even in construing wills, the judge may be put by parol evidence in the shoes of the testator, and he is bound to construe the will in the light of surrounding circumstances. We are not aware that the competency of such testimony has ever been questioned. In *Meach* v. *Meach*, 24 Vt. 591, it was expressly decided to be competent, where the gift was made by deed which contained nothing on that point. The grantor in that case was shown by parol to have been desperately sick with consumption at the time it was executed, and to have continued hopelessly sick until his

death. REDFIELD, C. J., on page 597 (manifestly referring to this evidence in connection with the deed), says,—" It was made during the last sickness, in prospect of certain and speedy dissolution, to take effect fully after death only." On page 600 he says,—" We think, therefore, that the deed of personal property, with the attending circumstances, did constitute a good gift *mortis causa*, and that the orator must hold it." The deed in *Meach* v. *Meach* was in the common form, except that it granted all the donor's personal property at the date, and all which he should be possessed of at his decease. The court, on pages 599 and 600, say,—" It is fair, we think, to give the words that signification, that the donee's full right, under the deed, should not become absolute and perfect except in the event of the donor's death." The present case is stronger, both in parol evidence, in evidence of delivery, and that the gift was to become perfect only in event of the donor's death, than *Meach* v. *Meach.* The donor first gives a description of the property ; he next states that he has put it into the hands of one of the donees ; he then states the purposes for which he has put it into his hands to be, "to pay my funeral charges," &c. ; he then recites by whom and in what mode the remainder is to be disposed of. Few things are clearer than that under this instrument the donees took no property absolutely, except in the event of the death of the donor. They could have nothing until they paid his funeral expenses. These expenses could not be ascertained till after his death and burial, unless the court are to hold, with Bro. Barnard, that the paper gave the donees the right to bury the donor at any time they chose before he died. The trust could only be executed by the person named therein. The donees, then, could have no such property, except in the event of the donor's death before their own decease. The donor had, then, by necessary implication, the power to revoke the gift at any time before his death. If this does not bring the donees within the rule, it will be difficult to find a case that comes within it. The paper itself is conclusive as to the purpose and character of the gift, and as to the event, upon the happening of which it was to vest absolutely. That is certain which can be made certain.

II. The counsel concedes, what nobody ever denied, the " actual delivery " of the gift. This was admitted at the trial. The counsel then objected that we could not prove the fact of " actual delivery " because the witnesses were not " indifferent," and therefore could not testify. He seems to have abandoned this objection, and we refer the court to our former brief on that point. His objection now seems to be, that we can not put the paper in evidence because the statute excludes all but unwritten evidence ; and then, that we cannot prove our case by living witnesses because of the same paper. We have already answered this argument. The counsel assumes that these witnesses are excluded from testifying as to any facts except to the execution of the paper. He cites no authority for such a position, and, we submit, none can be found. It seems to us that the last clause of the counsel's brief disposes of his whole case.

FOSTER, J. The first question is, whether the transaction between Enoch F. Sceva and the appellants, on the 24th day of April, 1872, a memorandum of which is expressed in the writing of that date, signed and sealed by said Sceva, constitutes a valid gift *causa mortis.*

If the whole transaction be expressed in writing, it is not invalidated by the fact that it is a written instead of a verbal transaction, if all the essential requisites to such a gift are found to exist. It is not necessary that such a gift should be expressed by writing, but it *may be* so constituted ; and if the writing embodies and expresses the intention of the party executing it, it will serve to explain and characterize the transaction.

M., being desperately sick, in prospect of death, executed to his wife a deed in common form of all his real estate, and, at the same time, executed a separate deed to her of all his personal property, consisting of stock on his farm and choses in action. Both deeds were duly recorded. M. continued hopelessly sick for a little more than a month after the execution of the deeds (like the intestate in this case), when he died. Upon a bill for specific performance, it was held that the deed of the personal property was valid as a *donatio mortis causa.* And REDFIELD, C. J., said,—"Upon principle, it would seem there could be no objection to creating the gift by deed  *  *  It is far less liable to perversion or abuse than any mere parol gift, with the most ceremonious delivery." *Meach* v. *Meach,* 24 Vt. 591, 598. And in *Tate* v. *Hilbert,* 2 Ves. Jr. 180, Lord Chancellor LOUGHBOROUGH speaks of a deed or writing as a substitute for manual delivery. Especially, it would seem, must this be so in the case of things incapable of manual delivery, as of a ship, for example.

But the appellants do not rely solely upon the writing. They claim, also, as we understand it, that a valid donation *causa mortis* was made, independently of the written memorandum, which may be entirely disregarded without affecting their rights,—in short, that their claim is established by proper proof of what was said and done concerning the money and note mentioned and described in the paper. The case finds that " on the same day, and before the execution of this paper, but as part of the same transaction, the intestate, in the presence of said three witnesses, and Jonathan Keniston, the father of the appellants, who was also present when said paper was executed, stated to them the same as appears in said paper, and showed them said cash and note," and that the note was at the same time indorsed by the said Sceva, and, with the cash, delivered to one of the appellants.

The case also finds that all this was done while the intestate was sick of the disease of which he subsequently died, and in expectation of death ; and that the intestate had real estate and other personal property, of which he made no disposition by will or otherwise.

The essential requisites of a valid gift *causa mortis* are well known and perfectly understood. They have in no respect changed since they were established and declared by the civil law whence they were

derived, except in this particular, that under the civil law delivery of the property was not absolutely essential to the validity of the gift—an element which, in our law, cannot be dispensed with. Sanders's Justinian 228, 229; 1 Williams on Executors and Administrators, pt. 2, B. 2, ch. 2, sec. 4, p. 544; 1 Story's Eq. Jur., sec. 607, *a ; Smith* v. *Kittridge,* 21 Vt. 244.

By our law, then, to constitute a *donatio mortis causa* there must be three attributes: (1) the gift must be with a view to the donor's death ; (2) it must be subject to the condition that it shall take effect only on the donor's death by his existing illness; and (3) there must be a delivery of the subject of the donation.   See the above authorities, and Bouv. Law Dic.

No particular form of words is necessary to give effect to the transaction, if the evidence of that which was said and done establishes the requisitions for its validity.

The admitted facts, in the present case, establish beyond question two of the essential attributes required: (1) the gift was made in expectation of death; (2) there was a delivery of the subject of the donation.

The doctrine is very clearly established, that a negotiable note, payable to bearer or indorsed in blank, and bank-notes, may be the subjects of a *donatio causa mortis.*    1 Story's Eq. Jur., sec. 607 *a ; Drury* v. *Smith,* 1 P. Wms. 405.    And the donor in fact died of his then existing disease.

The remaining essential requisite to the validity of the gift is, that it be conditioned to take effect only on the donor's death.    The condition is, that if the donor should survive, or if he should repent of having made the gift, or if the person to whom it has been given should die before the donor, then the donor shall receive back the thing given. Sanders's Justinian 228.

Was the gift accompanied by this condition ?    It is not expressed in those words in the writing, nor was it essential that it should be, even if the writing were alone to be resorted to for the interpretation of the transaction.

It is a question resting not in formal verbal expression necessarily, but in understanding and intention.    It is a question of fact, concerning the proper solution of which, under proper legal instructions, there can be no difficulty.

The jury may or may not resort to the writing in order to settle this point.   In *Meach* v. *Meach,* before cited, Judge REDFIELD said,—" In examining the case, it occurred to me that some one might object to this deed as a gift *mortis causa,* inasmuch as it does not, in terms, very explicitly provide that the gift should only take effect after the donor's death.   In a mere oral gift this is often implied from the attending circumstances, as is very obvious in the present case.   But the gift being by deed, we are, in a measure, confined to its terms, construed with reference to the attending circumstances."

The appellee contends that, by the manner of proof prescribed by

the statute, unwritten evidence seems to have been alone contemplated. Evidence of what? Clearly, at most, by the terms of the statute, of one thing merely—of one only of the essentials to the validity of the gift—namely, the *delivery* of the property, which the legislature has said, in effect, shall not be perfected merely by deed. " No gift in expectation of death, often called *donatio mortis causa*, shall be valid, unless the actual delivery of the property to the donee shall be proved by two other indifferent witnesses [that is, two indifferent witnesses other than or besides the donee], upon petition of the donee to the judge of probate to establish such gift, filed within sixty days after the decease of the donor." Gen. Stats., ch. 174, sec. 17.

Except with regard to the single matter of delivery, the proof of the transaction is unlimited by statute. And it would·seem too clear for argument, that not only the fact of delivery may be shown by two indifferent witnesses who may have seen the manual tradition of the property, but also by evidence of the same character of the admissions of the intestate that he had delivered it.

The declarations of an intestate are admissible against his administrator, or any other claiming in his right. 1 Gr. Ev., sec. 189.

The learned counsel for the appellants has, with much industry and ability, raised and combated many other objections to the validity of the gift in question, which the learned counsel for the appellee has not deemed it advisable to argue or suggest, and which, of course, it is not our duty to consider. It is quite sufficient for the court to dispose of the questions raised by the case. Having endeavored, we hope, successfully to do this,

*The case is now discharged.*

An auditor was appointed to determine and report the facts in this case ; and, upon the return of his report, a decree was made reversing the decision of the probate court, and establishing the gift as a valid *donatio causa mortis.*